[L. A. No. 4670. In Bank.—March 26, 1920.]

## H. R. SLAYDEN, etc., Respondent, v. M. F. O'DEA, Appellant.

[1] MECHANICS' LIENS — STOP NOTICE — INAPPLICABILITY TO PUBLIC WORK ON PUBLIC HIGHWAYS—CONSTRUCTION OF CODE.—The clause "wagon road or other structure" contained in section 1183 of the Code of Civil Procedure, which defines the structures and improvements upon which liens attach under the mechanic's lien law. does not include public roads or highways, but has reference to private wagon roads only, and, therefore, the provision of section 1184 as to stop notices in case of public work is not applicable to public work on public highways.

[2] ID.—RIGHT TO LIEN AND STOP NOTICE—PERSONS ENTITLED.—The
right to a lien under section 1183 of the Code of Civil Procedure
and to a stop notice under section 1184 is limited to those persons
described in the former section, namely, those who perform work on
structures therein described at the request of the owner.

[3] ID.—PUBLIC STREET WORK—REMEDY OF MATERIALMEN.—Neither
section 1183 nor section 1184 of the Code of Civil Procedure ap-
plies to work on a public street or highway, and the remedy of
materialmen in case of a contract let by the public authorities
for street work is upon the personal responsibility of the con-
tractor and his sureties, and in the case of a private contract upon
a public highway under section 1191, which gives a lien on the
abutting property.

[4] CONTRACT—ESCROW OF STREET IMPROVEMENT BONDS—DETERMINA-
TION OF VALIDITY OF CLAIMS—AGREEMENT BETWEEN CONTRACTOR
AND ASSIGNEE—LIEN IN FAVOR OF CLAIMANTS NOT CREATED.—An
agreement between a street contractor and his assignee providing
that two of the bonds issued against the improvement be left in
escrow with the county treasurer until the question of the validity
of certain claims for supplies be settled created in such claimants
no rights in or to the bonds not already existing, and the mere
withdrawal of the remainder of the bonds and the release of
the county from all obligation thereon by such claimants did
not, in the absence of the consent of the assignee, give such
claimants any equitable lien thereon as against him.

APPEAL from a judgment of the Superior Court of Los
Angeles County. John W. Shenk, Judge. Reversed.

The facts are stated in the opinion of the court.

Crouch & Crouch, Bradner W. Lee, Bradner W. Lee, Jr.,
and Kenyon F. Lee for Appellant.

J. W. Morin and Willoughby Rodman for Respondent.

WILBUR, J.—The plaintiff, having furnished certain
supplies to a contractor, brought this action to recover on
his own and certain similar assigned claims. M. F. O'Dea
appeals from that portion of the judgment giving to re-
spondent a lien upon two bonds, Nos. 9 and 10, of improve-
ment district No. 5 of the county of Los Angeles, which
bonds are now in the custody of John N. Hunt, treasurer
of the county of Los Angeles, and which represent two-
tenths of the contract price payable to the contractor for

the improvement of certain streets within such district (Stats. 1907, p. 806), under a contract of January 18, 1912, between the board of supervisors of the county of Los Angeles and one S. M. Kerns. S. M. Kerns gave a surety bond of the Maryland Casualty Company in an amount equal to fifty per cent of the contract price, for the benefit of laborers and materialmen, as required by law. (Stats. 1911, p. 1422.) On the following day, with the consent of the surety, Kerns assigned his contract to the defendant Imperial Engineering & Construction Company, of which company defendant O. O. Farmer was manager and principal stockholder. On the 18th of March, 1912, this company, for the purpose of securing funds for the carrying on of the work, assigned to M. F. O'Dea the contract and the bonds to be thereafter issued, and notice of the assignment was filed with the board of supervisors. O'Dea advanced over ten thousand dollars to the contractor for the performance of the work, which was completed July 13, 1912. During the months of September and October, 1912, before the issuance of any of said bonds to O'Dea, and while the same were in the custody of the county treasurer, plaintiff and his assignors filed with the board of supervisors of Los Angeles county notices that they had furnished supplies and material for the doing of this work, and therein claimed a lien upon the bonds to be issued therefor, and demanded that said bonds be withheld from the contractor. Because of these stop notices plaintiff claims a lien against said bonds, upon the theory that section 1184 of the Code of Civil Procedure was applicable. In addition, plaintiff claims that by reason of certain transactions between the various parties interested, in January, 1913, reference to which is hereafter made, that whether or not plaintiff was theretofore entitled to any lien upon said bonds, said transactions resulted in an equitable lien thereon in his favor for the amount of such claims.

Before considering the effect of the latter transactions it is well to dispose of the contention of respondent based upon the stop notices. Is section 1184 of the Code of Civil Procedure applicable to public work of this nature performed under the Road District Improvement Act? This section provides: " . . . in the case of property which, for reasons of public policy or otherwise, is not subject to the

liens in this chapter provided for, the owner or person who contracted with the contractor, shall withhold from his contractor sufficient money due or that may become due to such contractor to answer such claim.'' This provision for a stop notice is the only remedy provided by sections 1183 and 1184 of the Code of Civil Procedure, for persons furnishing materials to a contractor for use upon public improvements. This provision for a stop notice was virtually an enactment of the rule which had been developed by the courts in the interpretation of section 1184 of the Code of Civil Procedure, as it stood before the amendment. It had been held that this section as originally enacted provided two remedies for the laborers and materialmen, one a lien upon the structure or improvement created by his labor, and the other, a stop notice in the nature of a garnishment, and that the latter was the only remedy to be applied in the case of improvements upon public property, which could not be subject to a lien for reasons of public policy. (*Bates* v. *Santa Barbara,* 90 Cal. 543, [27 Pac. 438]; *Miles* v. *Ryan,* 172 Cal. 205, [157 Pac. 5].) Section 1183 defines the structures and improvements upon which liens attach under the mechanic's lien law. This section, so far as it relates to the matter here under consideration, is as follows: ''Mechanics, materialmen, . . . furnishing materials to be used or consumed in or furnishing . . . power contributing to the construction . . . of any building, wharf, . . . ditch, . . . railroad, *wagon road* or other structure, shall have a lien upon the property upon which they have . . . furnished materials, for the value of the, . . . materials furnished and for the value of the use of such . . . power, . . . whether . . . at the instance of the owner . . . or other person'' acting by his authority or under him. (Italics ours.) This statute does not purport to give a lien upon a public street or highway. Such highway does not belong to the county, but to the people of the state of California. (*People* v. *Holladay,* 93 Cal. 241, [27 Am. St. Rep. 186, 29 Pac. 54]; *People* v. *County of Marin,* 103 Cal. 223 [26 L. R. A. 659, 37 Pac. 203].) At the time the term ''wagon road'' was introduced into the mechanic's lien law, April 4, 1864 (Hittell's General Laws of California, p. 656, sec. 4496), the law provided for the incorporation of wagon road companies (Stats. 1853, p. 114) and for the securing of rights

of way for such wagon roads. The term "wagon roads" was used for long roads connecting distant cities and towns for the use of which tolls might be charged. (Stats. 1851, p. 323; Stats. 1857, p. 272; Stats. 1858, p. 48; Stats. 1859, pp. 228, 323.) The supplement to the mechanic's lien law, enacted in 1864, provided for liens upon wagon roads and railroads and nothing else. [1] It is apparent, therefore, that in using the expression "wagon road" the legislature did not intend to include a public road or highway. It is not to be assumed that the legislature intended to provide for a lien upon or the sale of a public street or highway or wagon road to pay the cost of its improvement. This is clear, not only from the fact that a public highway is not included within the description of improvements made at the request of the owner in section 1183, but also by the fact that the legislature, in the mechanic's lien law, has provided a separate and distinct method of enforcing rights of laborers and materialmen in the case of work done upon a public street or highway where such work is done at the instance of the owners of lots abutting upon the street, by providing for a lien, not upon the street, but upon the abutting lots. (Code Civ. Proc., sec. 1191.) This special provision also indicates that the legislature did not intend by the general language contained in section 1183, "or other structure," to include streets or highways which were specifically provided for by the same statute in another section. (See *Kreuzberger* v. *Wingfield*, 96 Cal. 251, 257, [31 Pac. 109].) It is true that this court has held that section 1183 of the Code of Civil Procedure applies to the case of contracts for the erection of public buildings and other public improvements therein specifically described, to the extent of authorizing the stop notice. (*Bates* v. *Santa Barbara*, 90 Cal. 543, [27 Pac. 438].) In other words, where the statute expressly authorizes a lien upon a building constructed by the owner thereof, this court has held that the garnishment provisions of the statute contained in section 1184 apply, notwithstanding the fact that a proper construction of this statute compels the conclusion that the legislature did not intend to create a lien upon such public building. (*Mayrhofer* v. *Board of Education*, 89 Cal. 110, [23 Am. St. Rep. 451, 26 Pac. 646]; *Bates* v. *Santa Barbara*, *supra*.) The mechanic's lien law was enacted upon the

mandate of the constitution (sec. 15, art. XX) for the pur-
pose of securing to mechanics and materialmen the liens
therein provided for, but it has been held that this con-
stitutional provision does not provide for liens upon public
buildings. (*Mayrhofer* v. *Board of Education, supra.*) It
was there said with reference to this constitutional pro-
vision: "The public policy appealed to is laid down in the
constitution itself. It is a constitutional policy. The sec-
tion under consideration [1183] on its face purports to be
a code provision providing a remedy by individuals against
individuals. The constitutional policy referred to· but
emphasizes the rule of construction, which would have been
sufficient of itself." The claim was there made "that public
buildings were included both in the word 'property' used
in the constitution and in the phrase 'any building' used
in the code, and, therefore, it must necessarily follow that
mechanics and materialmen are by these provisions given a
right to a lien upon the buildings. But this ignores the
rule of statutory construction, that the state is not bound
by general words in a statute, which would operate to trench
upon its sovereign rights, injuriously affect its capacity to
perform its functions, or establish a right of action against
it." In *Bates* v. *Santa Barbara, supra,* it is conceded that
a lien could not be acquired against a public building, but
the court said: "It does not follow that the claims of
Booty and Holmes are not subordinate and subject to the
claims of the plaintiffs. . . . Under section 1184 of the
Code of Civil Procedure, the mechanic or materialman may
give the owner of the building upon which he has per-
formed labor or for which he has furnished material written
notice of his claim, and thereupon it becomes the duty of
such owner to retain sufficient funds to answer such claim.
. . . Upon receipt of the notice the owner becomes liable
as on garnishment or assignment. . . . The equitable gar-
nishment provided by section 1184 of the Code of Civil
Procedure is a cumulative remedy in ordinary cases, but
in this instance it is the only remedy provided by the lien
law, because the pursuit of the remedy by foreclosure would
involve the taking of buildings which, on the grounds of
public policy and public necessity, are exempt from execu-
tion and forced sale. And this remedy is one which does
not contravene any principle of public policy." But neither

these decisions nor the amendment to section 1184 justify
the conclusion that there is a lien, or, in the absence thereof,
a right to a stop notice in the case of street improvements
that are not described in section 1183 and are not covered
by the provisions thereof. [2] The right to a lien, under
section 1183, and to a stop notice, under section 1184, is limited
to those *persons* described in section 1183, namely, those
who perform work on structures therein described at the
request of the *owner*.

Another consideration leads us to the same conclusion.
The legislature of 1911 not only enacted the mechanic's
lien law under consideration, but, by a separate and dis-
tinct act (Stats. 1911, p. 1422), required the execution of
a bond in the amount of fifty per cent of the contract price
in the case of a contract for public improvements, con-
ditioned for the payment of laborers and materialmen
working upon such improvements. Section 1183 of the
Code of Civil Procedure provides for a similar bond, but
the giving thereof is optional with the contractor and owner.
This statute provided (section 2) that any materialman,
etc., whose claim has not been paid by the contractor shall,
within ninety days from the time the contract is completed,
"file with the commissioners, managers, trustees, officers,
board of supervisors, board of trustees, common council,
or other body by whom such contract was awarded, a veri-
fied statement of such claims, together with a statement that
the same has not been paid. At any time within six months
after the filing of such claim, the person, company or cor-
poration filing the same may commence an action against
the sureties on the bond, specified and required by section 1
hereof.'' This constitutes an ample remedy for the pro-
tection of mechanics and others performing labor upon a
public highway, and indicates that the legislature did not
consider that sections 1183 and 1184 of the Code of Civil
Procedure covered every structure and improvement made
by public contract, such as streets and highways.

[3] From the foregoing considerations we conclude that
neither section 1183 nor section 1184 of the Code of Civil
Procedure applies to work on a public street or highway,
and that the remedy of materialmen in case of a contract
let by the public authorities for street work is upon the
personal responsibility of the contractor and his sureties,

and, in the case of a private contract upon a public highway, under section 1191 of the Code of Civil Procedure. A large part of the work upon public highways is done under the Vrooman Act and its amendments. We have recently held that in such cases the stop notice feature of section 1183 did not apply. That decision was based upon the fact that there was no indebtedness from the owner to the contractor to which the statute could apply. Here there was no owner within the meaning of section 1183. (*Adamson* v. *Paonessa,* 180 Cal. 157, [179 Pac. 880].)

In this view of the case it is unnecessary for us to determine whether food, coal, distillate, and gasoline are "power" or materials "consumed" in said work within the meaning of section 1183 of the Code of Civil Procedure, as claimed by respondent.

The next question is as to whether or not the transaction of January, 1913, between the parties resulted in an equitable lien upon such bonds in favor of respondent and his assignors. This transaction may thus be summarized: On January 28th, M. F. O'Dea and O. O. Farmer signed a contract concerning said bonds, to wit:

"AGREEMENT.

"This agreement, made and entered into between the Imperial Engineering & Construction Company, a corporation of the State of California, and O. O. Farmer, of the first part, and M. F. O'Dea, of Los Angeles, California, of the second part,

"Witnesseth:

"That whereas, M. F. O'Dea at divers times has advanced certain moneys to the Imperial Engineering & Construction Company to the extent of ten thousand, three hundred and thirty-six ($10,336.00) dollars, for the purpose of enabling said Imperial Engineering & Construction Company to carry on its contract to a completion for the improvement of an extension of Colorado street, in Road District No. 5, under Road Improvement of 1907, in Los Angeles County, California;

"And whereas, said Imperial Engineering & Construction Company finds that certain claims have been filed with the board of supervisors of the County of Los Angeles, California, for supplies by R. H. Slayden, Sarah Schweikert and Globe Grain &. Milling Company to the amount of two

thousand four hundred ninety-four and 62–100 ($2,494.62) dollars;

"And whereas, the validity of these liens so filed with the board of supervisors of Los Angeles county is questioned, and for the purpose of settling this liability, the parties hereto have consented that the County of Los Angeles shall retain two of the bonds issued against this improvement, to wit, bond No. nine (9) and ten (10), amounting to two thousand six hundred forty and 80–100 ($2640.80) dollars, which said two bonds so left in escrow with the county treasurer of said Los Angeles county are to remain with said county treasurer until the question of the validity of these three claims has been settled either in court or out of court;

"And whereas, said M. F. O'Dea has agreed to release all claims against the eight (8) other bonds which have been issued against the aforesaid improvement, provided he is protected against the claim of H. J. Slayden, Sarah Schweikert and Globe Grain & Milling Company, and said Imperial Engineering & Construction Company will defend all suits that may be brought against the amount of these two bonds so left in escrow, or against any parties having any interest in said bonds, and said Imperial Engineering & Construction Company will enter into a satisfactory bond to the amount of three thousand ($3000) dollars protecting said M. F. O'Dea against the contingent claim of said H. R. Slayden, Sarah Schweikert and Globe Grain & Milling Company, and further saving harmless against any suits that may be entered, and in case of any final adverse judgment, will pay the same and all costs and attorney's fees in connection therewith.

"Now therefore, it is hereby agreed between the parties hereto that said M. F. ODea, in consideration of his executing the release to the County of Los Angeles of his claim under his assignment of the contract in relation to said Colorado street improvement on eight (8) of the bonds issued therefor (of which he retains six (6) to apply on his account); and in further consideration of two (2) bonds remaining in escrow with the county treasurer of Los Angeles county as above stated, for the purpose as hereinbefore stated, said Imperial Engineering and Construction Company will enter into a bond to the amount of three

thousand ($3000) dollars, to save said M. F. O'Dea harmless against any suits that may be entered and in case of any final adverse judgment, pay the same and deliver to said M. F. O'Dea the said two bonds out of which he shall be paid his demand against said Imperial Engineering and Construction Company or pay in cash the balance and interest due said M. F. O'Dea, and said M. F. O'Dea upon receiving the *security* [written in ink on margin "Erased before agreement signed";] bond as aforesaid for $3000.00 for the purposes herein stated, surrender and return unto the Imperial Engineering & Construction Company, and O. O. Farmer, all of the notes and stock security which he now holds against either of said parties.

"In witness whereof, the parties hereto have hereunto signed this agreement this 28th day of January, A. D. 1913.

"O. O. FARMER.
"M. F. O'DEA.

"Witnessed by Ben C. Brock.

"Office of the treasurer of Los Angeles County, Los Angeles, California, John N. Hunt, treasurer.

"Los Angeles, Cal., Jan. 31/13.

"Received of the Imperial Eng. & Const. Co. (6) six bonds of Road District Improvement No. 5, par value of $1332.40 each.

"M. F. O'DEA."

In addition to this agreement, the only one in which M. F. O'Dea participated, the several claimants, whose rights were subsequently assigned to the plaintiff, notified the county treasurer in writing that they released him and the county from all obligation with reference to eight of the ten bonds then on deposit with him, and also executed releases to the Maryland Casualty Company of its obligation upon its surety bond. The Imperial Engineering & Construction Company agreed that bonds numbered 9 and 10 should remain with the county treasurer as security for the payment of the claims of plaintiff and his assignors. This company had no power to create a lien upon these bonds in the hands of the county treasurer superior to the claims of M. F. O'Dea under his prior assignment. The plaintiff and his assignors had no right in or to said bonds and the agreement of January, 1913, resulted from the refusal of the county authorities to deliver the bonds with-

out the consent of the plaintiff and his assignors, and not from any legal right on their part to prevent such delivery. It is necessary to consider further the terms of the contract signed by M. F. O'Dea and O. O. Farmer. Plaintiff and his assignors, not being parties to such contract, are only entitled to any benefit therein stipulated to accrue to them by reason of the rule that where a contract is made between two persons for the benefit of a third, that person can enforce the contract. (Civ. Code, sec. 1559.) There was apparently no dispute as to the amount of the indebtedness due from the Construction Company to the plaintiff and his assignors. The only dispute was as to whether or not the supplies were furnished to be used and were used upon the improvement for which the bonds were issued, and, if so, whether or not the stop notices of plaintiff and his assignors created a lien on or garnishment of such bonds in their favor. 'The recitals in this agreement are that the validity of the *liens claimed* by the plaintiff and his assignors were questioned, and that "for the purpose of settling *this* liability, the parties hereto have consented that the county of Los Angeles shall retain two of the bonds issued against this improvement, to wit, bond No. 9 and 10, amounting to $2,640.80, which said bonds so left in escrow with the county treasurer of said Los Angeles county, are to remain with said treasurer until the question of the *validity of these three claims* has been settled either in court or out of court." The contracting company agreed that it would defend "all suits that may be brought against the amount of these two bonds so left in escrow or against any party having any interest in said bonds." **[4]** It is evident that the purpose of the parties was to arrange for a plan by which the legality of the claims of the plaintiff and his assignors in and to the bonds should be determined, M. F. O'Dea and the contractor evidently claiming that these bonds were not subject to such liens. Inasmuch as the plaintiff and his assignors had no right in or to the bonds in question and no lien thereon, this agreement providing for their custody pending the litigation of that question created no right in them in or to said bonds not already existing, and the contract of the Construction Company with the lien claimants could not create such rights without the consent of M. F. O'Dea, and the mere

withdrawal of the other bonds, to which he was already entitled, did not operate as such consent, nor create any estoppel against him.

It follows that so much of the judgment as declared a lien on such bonds superior to the claim of M. F. O'Dea is erroneous. The respondent is entitled to a lien thereon by reason of his contract with the Construction Company, but subject and subordinate to the prior claims of the appellant for reimbursement for the balance due him from the con- tractor.

The judgment so far as it affects M. F. O'Dea and the right to the bonds in question is reversed.

Lennon, J., Kerrigan, J., *pro tem.*, and Shaw, J. con- curred.

OLNEY, J.—I dissent. The main opinion holds that the case is not one in which stop notices can be given under the mechanic's lien law. Section 1184 of the Code of Civil Procedure provides specifically that upon such notice being given by a workman or materialman "in the case of prop- erty which, for reasons of public policy or otherwise, is not subject to the liens in this chapter provided for, the owner or person who contracted with the contractor, shall with- hold from his contractor sufficient money due or that may become due to such contractor to answer such claim." The essential purpose of this provision is to create, by means of the stop notice, an equitable garnishment in all cases of public work where, if the work were on private property, the workman or materialman would have a lien. This is the established construction of the provision (*Bates* v. *Santa Barbara,* 90 Cal. 543, [27 Pac. 438]), and one plain on its face. The real question, therefore, is as to whether or not a workman or materialman would have a lien in such a case as the present if the work were done on private property.

This question is not touched on in the main opinion. The main opinion reasons that the words "wagon road" in section 1183 of the Code of Civil Procedure (the section providing for liens) mean a *private* wagon road and not public, and that, *therefore,* the provision of section 1184, as to stop notices in case of public work, does not apply.

This is a complete *non sequitur* and simply begs the whole question. Of course, section 1183 applies only to private wagon roads. It applies only to private property in any case, whether it be a wagon road or a building or what not. But it does not follow that because section 1183 means private wagon roads only, section 1184 does not apply to public wagon roads. The very purpose of the latter section is to make the stop notice good in the very case of public work where section 1183 does not apply to give a lien because the work is public and not private. If the reasoning of the main opinion is sound, it means that in no case of public work will a stop notice be effective, since in no case does section 1183 apply to public work and property, but always to private work and property. Yet our decisions are all the other way.

In this connection it should be noted that section 1183 does not apply to public work, not because of any limitation on the power of the legislature so to provide, but because it has been held that it was intended to apply only to private work (*Mayrhofer* v. *Board of Education*, 89 Cal. 110, [23 Am. St. Rep. 451, 26 Pac. 646], the leading case in this state on the point).

The main opinion also advances the argument that because section 1191 of the Code of Civil Procedure provides that where street work is done at the instance of an abutting property owner, workmen and materialmen shall have a lien upon the abutting property, it is to be inferred that they are to have no right under a stop notice where the work is not done at the instance of a private party, but by the public. I do not see any ground for such inference and no ground is stated. On the contrary, it seems to me the inference is very plainly the other way. Section 1191 is a part of the mechanic's lien law. When it provides for a lien on private property for street work done at the instance of a private property owner, where no lien exists upon the property improved, the street, because it is public property, the inference would seem to be plain that such work, street work, does come within the general operation of the mechanic's lien law so far as that law can be applicable. If this is true, the provision in regard to stop notices applies.

The main opinion also advances the argument that because, by a separate act of the legislature, a bond in favor of workmen and materialmen is required of a contractor for public work, when under the mechanic's lien law, the giving of such a bond is optional in the case of private work, it is to be inferred that such bond is the exclusive protection for workmen and materialmen under a contract for *street work*. But why exclusive as to street work as distinguished from other kinds of public work? If the act mentioned required such a bond in the particular case of street work alone, then, possibly, there might be some ground for inferring that the bond was intended as the sole protection in such a case. But the act does not so provide. It covers all kinds of public work—work as to which there can be no doubt that it is not the exclusive protection. If it were not intended to be exclusive as to public work in general, to which it in terms applies, why is it exclusive as to a particular kind of public work, to wit, street work. There is nothing in the act to indicate such distinction. Street work, in fact, is not mentioned in the act.

It is also intimated, rather than plainly stated, in the main opinion, that the provision of the statute for stop notices in case of public work does not apply to street work for the reason that in such a case the work is not done at the instance of the "owner." Presumably the thought is that streets and highways belong to the public at large, so to speak. But certainly, in the doing of street work, the county or municipality is the instrumentality or agency through whom the public at large acts, and why should not a stop notice to it, the agency, and the paying agency, be effective? Furthermore, the code section specifically provides that in case of public work the stop notice may be given to either "the owner or *person who contracted with the contractor*," and certainly the county or municipality is the person who contracts with the contractor. As to the case of *Adamson* v. *Paonessa*, 180 Cal. 157, [179 Pac. 880], to which the main opinion refers in this connection, suffice it to say that the conclusion there reached was very carefully put wholly upon the ground that, under the particular act involved, there was no fund upon which the stop notices could operate and they were, therefore, in-

CLXXXII Cal.—33

effective. Such, is not the case here. The contractor is paid directly by the county, and by the county alone, and there is a fund upon which the notices can operate, and that fund is in the hands of the county which is, in the language of the statute, "the person who contracted with the contractor," and who is required to recognize the notices.

When we come to the real question in the case, namely, whether or not the improvement here is of such a character that a lien would exist upon it if it were a private improvement upon private property, there can be little doubt as to the correct answer. Section 1183, after enumerating a number of improvements for which a lien may exist, concludes the enumeration by the words "wagon road or other structure." A reasonable fair construction of the words "wagon road" would probably include the improvement in the present case. It would seem fairly certain that "wagon road" is used in contradistinction to the word "railroad," which immediately precedes it in the enumeration, and means a road in the ordinary sense, a way prepared and used for ordinary vehicular traffic. The present improvement is just that, whether it be termed a street, or a highway, or a county road. But however this may be, it certainly comes within the words "or other structure" when those words are used in immediate connection with a "wagon road." If a wagon road is a structure, certainly the street or road here is an "other structure." In *Helm* v. *Chapman,* 66 Cal. 291, [5 Pac. 352], approved in *Williams* v. *Mountaineer etc. Co.,* 102 Cal. 142, [34 Pac. 702, 36 Pac. 388], and *Hines* v. *Miller,* 122 Cal. 517, [55 Pac. 401], it was held that the word "structure," as used in the mechanic's lien law, included an excavation on the property. If an excavation be a structure, certainly a built road is one. The question may be tested by a practical illustration. Would there be any doubt but that if private parties upon their own land had built an improvement such as that here (and private parties have done that very thing), a lien would exist in favor of workmen and materialmen contributing to the work? But if workmen and materialmen would have a lien in such a case upon private property, they are entitled here to the equitable garnishment which the statute provides they shall have in case

of public work, when, because the work and the property are public, they cannot have a lien.

Angellotti, C. J., and Lawlor, J., concurred.

Rehearing denied.

Shaw, J., Wilbur, J., Lennon, J., and Kerrigan, J., *pro tem.*, concurred.