[Civ. No. 2439. Third Appellate District.—May 4, 1922.]

MARYLAND CASUALTY COMPANY (a Corporation), Respondent, v. M. T. SHAFER et al., Defendants; O. M. THOMPSON et al., etc., Defendants, Cross-Complainants and Appellants.

[1] PUBLIC WORK—FAILURE TO FILE CLAIM—RECOVERY ON FAITHFUL PERFORMANCE BOND. — A materialman furnishing materials for public work who fails to file with the board of supervisors a verified statement of his claim within ninety days from the time the contract for the work is completed, as required by the act of 1897 (Stats. 1897, p. 201), is precluded from recovering on the bond given pursuant to the requirements of such act, and cannot recover under the faithful performance bond, given pursuant to the requirements of the contract.

[2] ID.—RETENTION OF FUND—PAYMENT OF VERIFIED CLAIMS—ASSIGNMENT BY CONTRACTOR — RELATIVE RIGHTS OF PARTIES. — Where a contract for county highway construction provided for the retention by the county of sufficient funds to pay claimants who filed verified claims, an assignment by the contractor of a part of the retained amount was without prejudice to the rights of the parties for whose benefit the fund was created.

APPEAL from a portion of a judgment of the Superior Court of Tulare County. T. N. Harvey, Judge. Affirmed.

The facts are stated in the opinion of the court.

Middlecoff, Scott & Ham, Farnsworth, McClure & Burke, Lewis H. Smith, W. N. Gilliam, J. A. Chase, Marley Fisher, Perry F. Backus, Russell & Heid, W. O. Tyler, Scarborough & Bowen, Blakeley Hughes and W. C. Hamilton for Appellants.

Bicksler, Smith & Parke and Franklin A. Plank for Respondent.

FINCH, P. J.—The county of Tulare and the defendant M. T. Shafer, on the 9th of February, 1918, entered into

1. Right of one furnishing labor or material to sue on contractor's bond on public work, note, Ann. Cas. 1916A, 758, 773.

a contract by the terms of which Shafer agreed to con-
struct a concrete highway for the county. Shafer com-
pleted the construction of the highway and the same was
accepted by the county January 28, 1919. He failed,
however, to pay many persons for labor, material, sup-
plies, team hire, and rental of equipment employed, fur-
nished, and used in the construction of the work. He
also made assignments to various persons of sums due or
to become due under the contract, and which remain unpaid.
The plaintiff, as surety of the contractor, brought this
action against the county, the contractor, and all claimants
under the contract to secure an adjudication of their re-
spective rights in and to the unpaid installments due from
the county and the plaintiff's liability under its contracts
of suretyship. The various claimants filed cross-complaints
setting up their respective claims to the unpaid install-
ments and their rights of recovery against the plaintiff.
The county paid into court the balance due under the con-
tract, $12,919.81, to be distributed in such manner and to
such parties as the court might adjudge, and none of the
parties are now claiming anything against the county.
From the judgment rendered, three separate appeals are
being prosecuted. This appeal is by Thompson Brothers
from that part of the judgment denying recovery against
the plaintiff and adjudging that other parties have superior
rights to payment out of the unpaid installment.

The contract provides "that the contractor shall pay
all bills for labor, team hire, material and supplies con-
tracted for by him on account of the work herein contem-
plated, when the same becomes due and payable." By the
terms of the contract Shafer was required to furnish "a
good and sufficient bond and undertaking in the sum of
$16,426.55 conditioned for the faithful performance of this
contract by the contractor, according to the terms and pro-
visions herein expressed." Pursuant to this requirement,
Shafer and the plaintiff executed a "bond for faithful
performance of contract" in the usual form, providing,
among other things, that the contractor "shall in all things
stand to and abide by and well and truly keep and per-
form the covenants, conditions, stipulations, contracts,
agreements and obligations in the foregoing contract, . . .
on his part to be kept or performed at the time and in the

manner therein specified . . . and shall idemnify and save harmless the said county of Tulare."

[1] It is contended that the plaintiff is liable under the faithful performance bond for the claim of Thompson Brothers. In support of such contention the following cases are cited: *French* v. *Farmer,* 178 Cal. 218 [172 Pac. 1102]; *Fuller* v. *Alturas School Dist.,* 28 Cal. App. 609 [153 Pac. 743]; *Callan* v. *Empire State Surety Co.,* 20 Cal. App. 483 [129 Pac. 978, 981]. If the faithful performance bond were the only one furnished, appellant's position would seem to be invulnerable, but the contract required and Shafer and the plaintiff executed a separate bond in express compliance with the requirements of the act of 1897 (Stats. 1897, p. 201), and acts amendatory thereof, entitled "An act to secure the payment of the claims of materialmen, mechanics, or laborers, employed by contractors upon state, municipal or other public work."

Liability under a contract of suretyship, as under other contracts, is dependent upon the intention of the parties thereto. In the discussion of a similar question in *French* v. *Farmer, supra,* it is said: "If . . . any effect whatever is to be given to this clause in the condition of the bond, it must be held that it was the intention of the parties to benefit such third persons. . . . The courts of Nebraska Missouri, Iowa, Indiana, and Michigan seem to hold to the view that if it can be fairly said from either the contract or the bond, which are to be construed together, that the parties intended to and did agree to pay such third persons, a suit could be brought on such bond by such third person to recover upon the promise so made for his benefit." Here, in compliance with the contract and the statute, a separate bond was given to secure payment of claims of the character under consideration and it would be unreasonable to hold that the parties intended the faithful performance bond to secure the same claims. The Statute of 1897 (as amended by Stats. 1911, p. 1422) provides that the claimants "shall, within ninety days from the time such contract is completed, file with the . . . board of supervisors . . . a verified statement of such claim." Concededly appellant failed to file such a claim and is therefore precluded from recovering on the bond given pursuant to the requirements of that statute. Such failure

affords no ground for relief under the faithful perform-
ance bond manifestly intended for a different purpose.

[2] Pursuant to the provisions of subdivision 11 of
section 2643 of the Political Code, the contract provides
that the county shall retain twenty-five per cent of the
estimated value of the work for thirty-five days after the
acceptance thereof. The contract further provides that
the county "may at its option, retain out of any amounts'
due the contractor, a sum sufficient to cover and pay any
such unpaid bills and claims, provided that sworn state-
ments of said bills and claims have been filed in the office
of the board of supervisors on or before the date on which
the final payment due the contractor under this contract,
shall be made by the first party through its board of super-
visors, as hereinafter set forth in article XIV of this con-
tract, and not later than ninety days after the completion
and acceptance of the work." As stated, the county re-
tained, under this provision, $12,919.81 due under the
contract, that sum being less than twenty-five per cent
of the value of the work. The court found that valid
claims, duly verified, were filed in due time with the board,
aggregating more than the amount retained by the county.
Appellant did not so file a verified claim but filed an order,
signed by the contractor, for the amount of such claim.
It is now contended that appellant was entitled to payment
out of the moneys retained by the county and deposited in
court as stated; that Shafer's order operated as an assign-
ment of the sum retained by the county to the amount of
the order; and that the plaintiff had no right or equity
in the fund reserved in so far as it had been assigned by
Shafer. In support of such contention appellant relies
on the cases of *Adamson* v. *Paonessa*, 180 Cal. 157 [179
Pac. 880], and *American Surety Co.* v. *Empire Securities
Co.*, 185 Cal. 586 [197 Pac. 941]. The first case relates to
a contract for street work under the Improvement Act of
1911 (Stats. 1911, p. 730), and the latter to similar work
under the Vrooman Act (Stats. 1885, p. 147). In neither
case did the contract provide for a reserve fund as in the
case at bar. In *Adamson* v. *Paonessa, supra,* this distinc-
tion is clearly pointed out by the court. The provision of
the contract for the retention of twenty-five per cent of the
value of the work until the completion thereof became a

part of the contract of suretyship and was as much for the indemnity of the surety as for the county. (*Prairie State Bank* v. *United States,* 164 U. S. 227 [41 L. Ed. 412, 17 Sup. Ct. Rep. 142, see, also, Rose's U. S. Notes].) The further provision for retention by the county of sufficient funds to pay claimants who filed verified claims was equally a part of plaintiff's contract and was for the protection of the surety as much as for that of claimants. To the extent that such provision was observed, the liability of the surety was lessened. The fund retained was beyond the control of Shafer and no assignment by him could prejudice the rights of the parties for whose benefit the fund was created. To hold otherwise would be to nullify the stipulation of the contract for the retention of the fund and to destroy the security intended for the benefit of claimants bringing themselves within its terms as well as for the protection of the surety. (*Wasco County* v. *New England Equitable Ins. Co.,* 88 Or. 465 [Ann. Cas. 1918E, 656, L. R. A. 1918D, 732, 172 Pac. 126]; *In re Scofield Co.,* 215 Fed. 45 [131 C. C. A. 353]; *Derby* v. *United States F. & G. Co.,* 87 Or. 34 [169 Pac. 500]; *Henningsen* v. *United States F. & G. Co.,* 208 U. S. 404 [52 L. Ed. 547, 28 Sup. Ct. Rep. 389, see, also, Rose's U. S. Notes]; *Columbia Digger Co.* v. *Rector,* 215 Fed. 618; *Greenville Bank* v. *Lawrence,* 76 Fed. 545 [22 C. C. A. 646].)

The court found that valid claims amounting to $14,419.50 were duly verified and filed with the board of supervisors and that such claimants in due time filed cross-complaints in this action and were entitled to judgment against the plaintiff for the respective amounts of their claims and that the plaintiff is entitled to have the whole of said $12,919.81 applied to the payment of such claims. The judgment against plaintiff awards such claimants the amounts of their respective claims and directs the clerk to pay them the amount of said fund in the proportion of their claims and on payment to the clerk by plaintiff of the remainder of the judgment, to pay the claimants in full upon satisfaction of the judgment by them. The judgment further provides that, upon payment by plaintiff to any of said claimants of the sums awarded them, the clerk shall pay plaintiff such part of the $12,919.81 as said claimants otherwise would be entitled to

receive. Appellant contends that the findings are insufficient to support the judgment. Whatever grounds of objection may be available to other parties defendant, the findings clearly show that appellant, by reason of failure to file a verified statement of claim with the board of supervisors as provided by the contract, is not entitled to participate in the distribution of the fund reserved and, therefore, cannot be heard to complain of the disposition made thereof.

That part of the judgment appealed from is affirmed.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 3, 1922, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 3, 1922.

All the Justices concurred, except Wilbur, J., who dissented, and Lawlor, J., and Lennon, J., who were absent.

Shurtleff, J., was also absent and Richards, J., *pro tem.*, was acting.