[Civ. No. 2700.  Third Appellate District.—April 19, 1924.]

LEE CASTRO et al., Plaintiffs, v. STEPHEN V. R. MAL-COLM et al., Defendants; AMERICAN SURETY COMPANY OF NEW YORK (a Corporation), Cross-complainant and Respondent; EMPIRE SECURITIES COMPANY (a Corporation), Cross-defendant and Appellant.

[1] PUBLIC WORKS—HIGHWAY CONSTRUCTION—ABANDONMENT—COMPE-TITION BY COUNTY — RIGHT TO MONEYS DUE. — Where the contract for the construction and improvement of a section of a county highway not only gives the county the right to withhold twenty-five per cent of the stipulated amount to be paid as compensation for the proposed improvement, but also gives the county the right, in the event of abandonment by the contractor, to use any moneys due or to become due on the contract to complete the work left undone, the contractor cannot make any assignment of the funds due to him at the time of the abandonment of the contract that will affect the right of the county to use that fund in the payment of the expenses in completing the work; and the right of the county, in such event, is not limited to the retained percentage of twenty-five per cent.

[2] ID.—ADVANCES BY SURETY—PREFERENTIAL RIGHTS—SUBROGATION. Under such contract, where the contractor abandoned the work, and the contract was thereupon forfeited by the county, which elected to and did complete the work, the surety on the labor and material and the faithful performance bonds executed in connection with said contract, was subrogated in equity to the rights of the county, to the extent of the moneys advanced

---

1. See 2 R. C. L. 601.

2. Right of surety on contractor's bond as against assignee of fund, notes, 14 L. R. A. (N. S.) 457; L. R. A. 1918A, 937; L. R. A. 1918D, 736. See, also, 25 R. C. L. 1327.

by it to the county to pay for the completion of the work or the discharge of claims of laborers and materialmen; and such surety was entitled to moneys due from the county at the time of the abandonment of the work, in preference to a general creditor of the contractor which held an assignment of the claim or estimate due at the time of abandonment.

[3] ID. — ASSIGNMENT OF WARRANT — CONSIDERATION — GENERAL ADVANCES—STATUS OF FINANCE COMPANY.—In such case, in so far as the assigned warrant was concerned, the finance company which held same stood in the position of a general creditor of the contractor, where no money was advanced on account thereof, although such finance company had made advances to the contractor, but such moneys had gone into the general banking account of the contractor upon which checks were drawn in prosecution of at least four distinct and separate contracts for that many different specified improvements.

(1) 29 **C. J.**, p. 610, sec. 349 (1926 Anno.).    (2) 37 **Cyc.**, p. 428. (3) 37 **Cyc.**, p. 428.

APPEAL from a judgment of the Superior Court of Kern County. Milton T. Farmer, Judge. Affirmed.

The facts are stated in the opinion of the court.

Kennicott & Williams for Appellant.

Lawler & Degnan for Respondent.

PLUMMER, J.—On the thirteenth day of June, 1916, an agreement was entered into between the county of Kern, acting through its board of supervisors, as the party of the first part, and the Coast Construction Company, a partnership consisting of Stephen V. R. Malcolm and others, as party of the second part, for the construction and improvement of 7.56 miles of that certain highway in the county of Kern known as and called the McKittrick-Maricopa road, for the estimated sum of $44,766.15, to which was thereafter added, as extras, the sum of $1,017.42. At the same time, and as a part of the same transaction, there was delivered to the board of supervisors of said county of Kern and made a part of said agreement two certain bonds, executed by the American Surety Company of New York, the cross-complainant and respondent

in this action. One of said bonds was for the faithful performance of said contract and executed in the sum of $11,191.54. The second bond was given for the security of materialmen and laborers and was in the sum of $22,383.08.

The agreement was conditioned in the usual form and provided for progress payments in the sum of seventy-five per cent of the estimated value of the work and the retention by the county of Kern of the sum of twenty-five per cent until thirty-five days after the final completion of the work agreed to be performed. The bonds were conditioned as is usual in such cases.

Thereafter, and on or about the thirtieth day of June, 1916, the Coast Construction Company, the contractor in the agreement above mentioned, entered into an agreement with the Empire Securities Company, the appellant in this action, whereby the execution of the contract for the work above provided to be done by the Coast Construction Company was set forth, also the execution of the two bonds given by the American Surety Company of New York. The amount of the contract and other matters were set forth. It was mentioned that the contractor desired to borrow money for the purpose of enabling the contractor to carry out the aforesaid contract and the Securities Company was willing to lend money for that purpose. It was agreed that the Securities Company would advance to the contractor in installments, as requested from time to time, money not in excess of seventy-five per cent of the work done and materials furnished under the aforesaid contract, etc.; it was further provided that an agent of the Securities Company might be at all times upon the work with authority limited to the keeping of the time of employees, the paying of bills for labor and material and seeing that all labor and material previously furnished had been paid for, etc. As security for such advances, the agreement assigned to the Securities Company all the right, title and interest of the contractor in and to the moneys that might become due and payable under the agreement for the improvement of the road above mentioned.

Under this agreement with the contractor the Securities Company loaned the sum of $32,284.65, all of which was

entered into and became a part of the general banking account of the Coast Construction Company.

The contractor entered upon the performance of the work early in July, 1916, and proceeded with the same until on or about the eleventh day of December, 1916, when it abandoned the same and discontinued work thereunder. At the time of the abandonment of the work, five units, upon which seventy-five per cent estimates, had been made, were completed. Of these, four estimates in the aggregate of $20,304.94 had been paid. The fifth estimate, approved by the highway commission, but not by the board of supervisors, in the sum of $3,867.25, remained unpaid. It is this sum that is in controversy in this action. The trial court awarded this sum to the American Surety Company, and it is from this part of the judgment or decree of the trial court that the Securities Company appeals.

At the conclusion of the trial it was adjudged that laborers and materialmen had enforceable claims against the Surety Company in the total sum of $15,703.38. It was also found by the trial court that, at the time of the abandonment of the contract the status of the contract and the amount of money still in the county treasury in the county of Kern was as follows:

```
"Contract price  ...........................$44,766.15
Extras  ....................................  1,017.42
                                             _____
  Total ....................................$45,783.57
Payments to contractor......................  20,304.94
                                             _____
  Balance available for completion............$25,478.63
```
The amount last stated was made up as follows:
```
Retained percentages  ...............$ 8,057.39
Fifth estimate, approved by Highway
  Commission but not by Supervisors,
  exclusive of retained percentage of
  25 per cent ......................  3,867.25
Unearned balance of contract price...  13,553.99
                                      _____
Unexpended balance .........................$25,478.63
```
It was further established that the county of Kern had forfeited such

contract and had elected to and did
complete the work therein provided
for, expending in connection there-
with, after allowance of certain
credits, the sum of.........................$18,660.26
  [Tr. 615]

Leaving in the hands of the county for
such disposition as the court might
direct, the sum of........................$ 6,818.37"

As to the payment made by the contractor for labor and
material, the trial court found as follows: "Approximately
the sum of $20,000 was proven by said contractors to have
been expended in connection with said contract, but a sub-
stantial part of said last-named amount was expended for
purposes other than material and labor. Whether such
sum was paid from the fund so furnished by said Em-
pire Securities Company, or from moneys borrowed by said
contractors from other sources, because of the mingling of
said funds, to the knowledge, and with the consent of said
Empire Securities Company, it is impossible to deter-
mine."

The trial court also found that the Securities Company,
at the time of the assignment of $3,867.25 was made to it
by the Coast Construction Company, advanced nothing of
value and did not pay out any money represented or cov-
ered by said assignment towards the discharge of the claims
of the materialmen for the payment of labor on account
of the improvement of said highway; that the only promise
made by the Empire Securities Company was that, if a
representative of the Coast Construction Company would
go to Bakersfield and there assign to the Empire Securities
Company said claim or estimate in the sum of $3,867.25,
the Empire Securities Company would then consider the
making of a further advance. This advance was desired
to meet a pay-roll of the Construction Company then
due. This advance was never made. The court further
found that the Securities Company desired the assignment
for the intent and purpose of appropriating to its own
use the amount of money represented thereby and not for
the purpose of applying the sum towards the payment of
labor performed upon or materials used in construction

work on the highway referred to. These findings are challenged as well as one involving the good faith of the Securities Company. This latter, however, for the reasons hereinafter stated, we do not deem material. The testimony shows without conflict that the Coast Construction Company had at least four contracts for work and improvement during the pendency of the agreement involved in this action in which the Securities Company, the appellant in this action, was doing the financing; that all the money received from the Securities Company went into and became a part of the general banking account of the Coast Construction Company and the funds thereof so intermingled that their identity became lost. The testimony also shows that while the Empire Securities Company had a representative on the scene of the work no special effort was made to ascertain if the funds were being properly applied by the Coast Construction Company. The witness who had charge of the financial affairs of the Empire Securities Company during the period in question, testified as follows: "I made no special effort to know that the money paid to them was paid to any particular creditor, or materialman of any kind." Also, that he knew that the Construction Company was keeping its accounts at the Merchants National Bank. In relation to the assignment of the fifth estimate hereinbefore referred to, this witness also testified in substance as follows: That he knew Mr. Farish, one of the partners composing the Coast Construction Company; that on or about the twenty-first or twenty-second day of November, 1916, he had a conversation with Mr. Farish in relation to money needed to meet the payroll then owing by the company; that he paid Mr. Farish the sum of $12.65 to meet the traveling expenses of Mr. Farish in going and returning from Bakersfield; that if Mr. Farish would go to Bakersfield and make an assignment of the fifth estimate to the Securities Company that the Securities Company would then consider the question of further advances. No further advances, however, were made. It appears that Mr. Farish went to Bakersfield, indorsed an assignment on a warrant, returned to Los Angeles and reported his action to this witness. The warrant, however, does not appear to have been delivered to

the Securities Company, nor does it appear just what was done with the warrant thereafter. This witness also stated that Farish reported to him that the affairs of the Coast Construction Company were in bad shape and that another member of the Coast Construction Company had deliberately and willfully deceived him (Mr. Farish) as to the condition of the company.

It is by virtue of this assignment of the fifth estimate that the Securities Company claims to be entitled to the sum of $3,867.25, as hereinbefore stated. To support its contention the appellant relies upon the cases of *Los Angeles Rock and Gravel Co.* v. *Coast Construction Co.*, 185 Cal. 586 [197 Pac. 941]; *Slayden* v. *O'Dea*, 182 Cal. 500 [189 Pac. 1066]; *Adamson* v. *Paonessa*, 180 Cal. 157 [179 Pac. 880]; *Hunt* v. *Empire Securities Co.*, 50 Cal. App. 43 [194 Pac. 744]. These cases, however, have no application to the issues presented to this court for decision. In those cases the contracts were awarded under the provisions of the Vrooman Act (Stats. 1885, p. 147), or the Improvement Act of 1911 (Stats. 1911, p. 730), contain no provisions as to the retention of any portion of the contract price, and also were instances in which the contracting parties had no rights in any portion of the amount agreed to be paid to which a surety upon performance could be subrogated. [1] In the case at bar the county of Kern had control and in its treasury the entire sum agreed to be paid to the contractor and the provisions of the contract not only gave the county the right to withhold twenty-five per cent of the stipulated amount to be paid as compensation for the proposed improvement, but also had the right in the event of the abandonment of the contract by the contractor, to use any moneys due or to become due on the contract to complete the work that might be left undone by the contractor. Section 106 of the agreement between the Coast Construction Company, the contractor, and the county of Kern provided for such contingency and gave the county the power above stated. After specifying what the county might do towards completing the work should it be left undone by the contractor, that section contains this language: "All expenses charged under this paragraph shall be deducted and paid by the county out of any moneys then due or to become

66 Cal. App.—41

due the contractor under the contract or any part thereof; and in such accounting the county shall not be held to obtain the lowest figures for the work of completing the contract or any part thereof, or for insuring its proper completion, but all sums actually paid therefor shall be charged to the contractor.'' By the very terms of this section the county of Kern was given the right to use all moneys due the contractor under any circumstances and was not limited to the twenty-five per cent specified to be retained by the county in other portions of the contract. In other words, the county was not required to reserve any portion of the fund or exercise any priority in the expenditure thereof in the completion of the work. In other words, it could use the money claimed by the Securities Company as assignee herein and also of the American Surety Company by reason of its subrogation to the rights of the county to whatever might be left of the twenty-five per cent reserve fund hereinbefore mentioned. Or to state the matter in a different manner, the contractor could not make any assignment of any funds due to him at the time of the abandonment of the contract that would affect the right of the county to use that fund in the payment of the expenses of completing the work. [2] If this is true, it would seem that the Surety Company, under the instruments to which we have heretofore referred, the existence of which the Empire Securities Company in its agreement admits knowledge, would, if it advanced money to the county of Kern to pay for the completion of the work or the discharge of the claims of laborers and materialmen, be subrogated in equity to the rights of the county. The transcript shows that the American Surety Company advanced the sum of $15,703.25 and that of the retained percentages which amounted to $8,057.39 in the first instance, the Surety Company was entitled to receive the remaining balance, which had been cut down to $6,818.37. In other words, the American Surety Company is not awarded under the judgment the amount to which it would otherwise legally be entitled under the contract on account of retained percentages for the simple reason that the county of Kern was entitled to and did deduct therefrom a little over $2,000 in making payment to the persons who finished the work, the net loss to the Surety Company being the

difference between $6,818.37 awarded to it from the county
and the sum of $15,703.38 paid out by it on account of
labor and materials going into the improvement of the
highway in question.

[3] In so far as the assigned warrant is concerned
which is involved in this case, the Securities Company
stands in the position of a general creditor. No money was
advanced on account thereof, as heretofore stated, and as
also shown all moneys advanced by the Securities Company
went into the general banking account of the Coast Con-
struction Company upon which checks were drawn in prose-
cution of at least four distinct and separate contracts for
that many different specified improvements. In this par-
ticular the language of the court in *Title Guaranty &
Surety Co.* v. *Dutcher,* 203 Fed. 167, quoting from page
169, is directly applicable: "All the money borrowed by
the contractor went into his general bank account with
other of his money. During the time involved he had four
separate contracts with the city. No account was kept of
the particular work upon which disbursements were made,
and it is not shown how much, if any, of the money bor-
rowed, or other money of his, was paid upon the contract
in question." Under such circumstances it was held that
the rights of the surety were paramount. A large number
of cases were also cited by the court in the above-men-
tioned decision. To the same effect is the case of *First
Nat. Bank of Seattle* v. *City Trust etc.,* 114 Fed. 529 [52
C. C. A. 313]. In that case the rights of the surety on
account of moneys advanced by it to discharge claims for
unpaid labor and material were held paramount to that
of the bank which founded its claims upon money loaned
to the contractor, which likewise went into the contractor's
general banking account.

In *In re McGarry & Son,* 240 Fed. 400 [153 C. C. A.
326], it is held: "That the surety, on payment of labor
and material claims, was subrogated and that its equity
attached as of the date of the bond, and that a mere volun-
teer's rights would be subject to those of the surety who
pays the labor and material bills." (Citing *Prairie State
Bank* v. *United States,* 164 U. S. 227 [41 L. Ed. 412, 17
Sup. Ct. Rep. 142, see, also, Rose's U. S. Notes].) In that
case it was held that the rights of the surety on account

of moneys paid for materialmen and labor were superior to those of an assignee of the contractor. In that case it was also held that the fund under the contract was for a particular class of creditors to which class the assignee did not belong. This is true of the case at bar.

In the case of *Wasco County* v. *New England Equitable Ins. Co.*, 88 Or. 465 [Ann. Cas. 1918E, 656, L. R. A. 1918D, 732, 172 Pac. 126], the supreme court of Oregon speaks of the rights of the respective parties as follows: "When the bank loaned its money it knew that before Cromer entered upon the performance of his contract he had given a bond signed by a surety, and that the law required the county to reserve twenty-five per cent of each monthly estimate. From the date of the contract of suretyship the bank was bound to know that the insurance company had an equity in the funds to be reserved; and when the bank loaned its money it did something that it was not obligated to do, and it must be deemed to have acted with a full knowledge of the right of the surety. The contractor and the bank could not create a lien in favor of the bank upon the reserved fund and make it paramount to a prior and then existing lien of the surety," citing a number of authorities to the same effect.

The federal cases, heretofore cited, are supported by the decision in the case of *Prairie State Bank* v. *United States, supra*. Whether the law required the retention of twenty-five per cent is wholly immaterial as the contract of which all parties had notice so specified. An almost identical question was before this court in the case of *Maryland Casualty Company* v. *Shafer*, 57 Cal. App. 580 [208 Pac. 192]. In that case, this court, speaking through the presiding justice, said: "The further provision for retention by the county of sufficient funds to pay claimants who filed verified claims was equally a part of plaintiff's contract and was for the protection of the surety as much as for that of claimants. To the extent that such provision was observed, the liability of the surety was lessened. The fund retained was beyond the control of Shafer and no assignment by him could prejudice the rights of the parties for whose benefit the fund was created. To hold otherwise would be to nullify the stipulation of the contract for the retention of the fund and to destroy the security intended for the

benefit of claimants bringing themselves within its terms as well as for the protection of the surety.'' This statement of the law is supported by a large number of authorities there collated. This case also shows the difference in the application of the principle or rule of law relating to the rights of the parties where the party contracting for the work has control of the fund and may lawfully contract to reserve a certain percentage thereof and cases in which no such power exists. In one case the rights of the sureties can and will be protected; in the other it is found impossible so to do.

To summarize this case, we have these facts: The contractor was carrying on four contracts; all its money was placed into and withdrawn from a general banking account; the money was not traced; the appellant claims the thirty-eight hundred odd dollars on account of an assignment indorsed upon the fifth estimate upon which no money was advanced by the assignee but which it was understood, as shown by the testimony which we have quoted, the matter of advancing money would be taken up and further considered; the contractor defaulted in his work; at the time of the default the county had in its possession something over $8,000 in retained percentages, as well as other sums of money due and to become due the contractor; the surety advanced over $15,000 to pay the claims of materialmen and laborers on account of the contract.

In view of this summary and of all that we have hereinbefore stated, we think that the judgment of the trial court should be affirmed, and it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 16, 1924.

All the Justices concurred.