## MORAN v. GUARDIAN CASUALTY CO.
### No. 6309.

United States Court of Appeals for the District of Columbia.

Argued Jan. 10, 11, 1935.

Decided Feb. 25, 1935.

John Philip Hill and Francis W. Hill, Jr., both of Washington, D. C., for appellant.

Edward S. Bailey and James C. Rogers, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a contest between appellant and appellee over a fund amounting to $4,068.05 found to be due by the United States to a contractor for work done under a contract with the United States. The government has paid the money to a receiver appointed in the cause. The suit below was begun by Stephens and others claiming to be creditors of the contractor, alleging its bankruptcy and asking for the appointment of a receiver to collect its assets, including the amount due by the United States, and for distribution in accordance with the equities and priorities established. Appellant, North Capitol Savings Bank, intervened, alleging it had loaned the contractor $3,800, on the contractor's promissory note, for the purpose of providing funds for labor and material furnished in the prosecution of the government work; that the contractor had then and there made and delivered to it a power of attorney to receive, indorse, and collect in its name checks drawn on the Treasurer of the United States and delivered on account of the work; and prayed that it be decreed to have a prior equitable lien upon the fund.

During the progress of the litigation the bank was placed in the hands of Moran, receiver, who was duly substituted in the place and stead of the bank.

Thereafter appellee, Guardian Casualty Company, filed its intervening petition, alleging that it had become surety for the contractor and, as a result of contractor's default, had paid out sums in excess of the fund remaining in the hands of the government, and was entitled to reimbursement to the whole extent of the fund. The cause was in due time referred to an auditor, who reported that the contractor and the United States had entered into a contract, as the result of which the contractor had agreed to furnish labor, materials, etc., in connection with certain government work in the Anacostia river at Washington; and that appellee, in order to secure the performance of the contract and the payment for labor, materials, and supplies furnished in the work, had executed the usual statutory bond as surety; that in consideration of its becoming surety contractor agreed to indemnify it against all loss sustained or incurred by it as surety, and had assigned to it all percentages retained on account of the contract, and any and all sums that might be due by the United States at the time of any abandonment, forfeiture, or breach. The contract was terminated by the United States before the completion of the work because of breach of contract by contractor, and the amount paid by the United States

to the receiver was the amount then due the contractor. The auditor further reported that contractor had failed to pay various claims for labor and materials furnished it and used in the work, and that appellee, as surety, had duly paid such claims, aggregating $6,077.48, and was entitled to be reimbursed to the extent of the fund in the hands of the receiver. The lower court overruled appellant's exceptions, and decreed in accordance with the auditor's findings. This appeal was then taken.

We think the lower court's decree was in all respects correct. In Lyttle v. National Surety Co., 43 App. D. C. 136, we held, in a case involving the rights of a surety who had paid the claims of laborers and materialmen under a bond similar in all respects to the one here, that the surety was entitled to be subrogated not only to the rights of the contractor, but also to the rights of the United States under the contract. The former rights are here and generally bootless, but the latter include every right which the United States were capable of asserting against contractor had the surety not satisfied the obligations of the contract. We likewise held that this equitable right or lien existed in favor of the surety from the date of the bond. We said as much again in the recent case of Philadelphia Bank v. McKinlay, Trustee, 63 App. D. C. 296, 72 F.(2d) 89. In these circumstances, we have no doubt that appellee, as surety, is entitled to priority, notwithstanding the subsequent assignment of the fund by contractor; and this is true even though the assignment was given for an advancement of money used in the prosecution of the work. Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412. And see, also, Exchange State Bank v. Fed. Surety Co. (C. C. A.) 28 F. (2d) 485–488, where the cases are collected at great length.

Here, so far as the record discloses, contractor, having made its contract with the United States and being in need of funds to carry on the work, obtained a loan from appellant. To secure this it required contractor to make the power of attorney already mentioned and, in addition, to appoint one of its officers treasurer of contractor. It is quite true the proceeds of the note were used in the prosecution of the work, but that mere fact did not of itself create a right of subrogation to the claims of materialmen and laborers who were thereby paid. There is nothing to show an assignment of such claims. United States v. Rundle (C. C. A.) 107 F. 227, 52 L. R. A. 505. The money advanced by the bank went into the treasury of contractor and was disbursed in the ordinary course. It was a deliberate advancement of money or, if it be regarded as in payment of debts of contractor for labor and materials, it was a voluntary payment. There was neither obligation nor compulsion and, in such case, it has always been held that the party paying is a volunteer. Prairie State Nat. Bank v. United States, supra; Henningsen v. United States F. & G. Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547. In that case he is presumed to act with full knowledge of the rights of the surety, and these rights, as we have seen, include a lien in favor of the surety from the date of the execution of the bond, for the surety by the terms of the bond is bound to the payment of all claims growing out of the performance of the contract and this, of itself, creates the equitable right of subrogation. The subsequent assignment, therefore, was wholly insufficient to create a superior lien to the then existing lien of the surety (appellee). These principles are so elementary that further discussion would obviously be out of order.

Affirmed.