**STREET v. PACIFIC INDEMNITY CO.***
No. 7691.

Circuit Court of Appeals, Ninth Circuit.
Aug. 26, 1935.

Clarence A. Linn, of San Francisco, Cal., for appellant.

Milton Newmark, of San Francisco, Cal., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order made by the District Court in bankruptcy confirming the order of the referee denying the application of the trustee in bankruptcy for an order directing the Pacific Indemnity Company to turn over the sum of $23,459.75 collected by it from the county of Alameda upon a contract for the improvement of a road entered into between J. F. Collins, the bankrupt,' and the county of Alameda, and assigned to the Pacific Indemnity Company June 11, 1929, the date of the contract, and later, on October 17, 1929, again assigned to it. The first assignment was made in connection with and as security for the giving of two surety bonds by the Pacific Indemnity Company, each for the sum of $23,000 executed by the bankrupt and by the Pacific Indemnity Company to the county of Alameda, one to secure the faithful performancee of the contract for the improvement of the road, the other, also required by statute, to secure the payment of labor and material used in the performance of the contract by the contractor.

On September 25, 1929, the surety company, acting under the terms of its contract with the bankrupt, took over the completion of the job, having been advised that the bankrupt was in financial difficulties and unable to do so. The work was completed on November 12, 1929, and notice of completion was given on that date to the board of supervisors of the county of Alameda by the county surveyor. The Pacific Indemnity Company, which we will hereinafter refer to as the indemnity company, expended $7,202.25 in completing the work and collected from the county on said contract for the performance of said work, the sum of $23,859.75. It disbursed the entire sum not used in completing the work in payment of obligations for material and labor incurred by the bankrupt in the partial performance of the contract by him. The total amount expended by the indemnity company was $23,942.61, being $82.86 more than received by it from the county. The appellant concedes that the indemnity company has a preferred claim against the fund collected by it from the county for such work for the sum expended by it in the completion of the work, $7,202.25, but with reference to that fund contends it should be first paid to the trustee and then returned in due course of administration. With reference to the balance of the fund appellant contends that the indemnity company has no right to the moneys collected by it from the county and paid by it to the laborers and materialmen who performed work or furnished material for the improvement of the road. Appellant bases his contention upon the decisions of the Supreme Court of California in Adamson v. Paonessa, 180 Cal. 157, 167, 179 P. 880; Los Angeles Rock & Gravel Co. v. Coast Const. Co., 185 Cal. 586, 197 P. 941, and upon our decision in American Surety Co. v. City of Santa Barbara, 56 F.(2d) 769, 771, 772, which hold that a surety company is entitled to be subrogated to the claims of laborers and materialmen in and to the funds derived from the performance of the work, but also hold that where the laborers and materialmen have no claim upon the fund at the time the claims were paid by the surety company, the surety company acquires no right to the fund upon the principle of subrogation. These cases arose under entirely different statutes and have no application to the case at bar. See Maryland Casualty Co. v. Shafer, 57 Cal. App. 580, 208 P. 192; Id., 57 Cal. App. 585, 208 P. 194; Castro v. Malcolm, 66 Cal. App. 635, 226 P. 976.

The contract here in question was executed by the board of supervisors on behalf of the county of Alameda in pursuance of its general powers to improve the roads of the county and also was authorized by the Public Works Act of 1919 (St. 1919, p. 487, Deering's Gen. Laws 1931, Act 6423, p. 3680). This statute, as amended in 1925 and 1927 (Cal. St. 1925, p. 538; St. 1927, p. 282, 3 Deering's Gen. Laws 1931, Act 6423), authorizes an action by a

materialman or laborer furnishing material or performing labor for the contractor in carrying out the contract, against the officers of the county whose duty it is to make payment on the contract, for any unpaid sum due thereon, where a stop notice has been filed by the claimant in conformity with provisions of sections 1184, 1184a, 1184b, and 1184c, of the California Code of Civil Procedure. In compliance with this statute, stop notices were filed in the case at bar for various claims aggregating the sum of $12,763.98. It is clear that the indemnity company, who is bound by its bond to pay these claims, was subrogated to the right of the laborers and materialmen against the fund. As a matter of precaution the indemnity company took assignments of these claims at the time they were paid, and thus in law as well as in equity were subrogated to the rights of the laborers and materialmen. With reference to the balance of the claims paid by the indemnity company, apparently no stop notices had been filed at the time they were paid by the indemnity company, but there is no contention that these payments were made before the period for filing such stop notices had expired. The claimants had an inchoate lien upon the fund to which the indemnity company was subrogated. Hampton v. Christensen, 148 Cal. 729, 737, 84 P. 200; People v. Moxley, 17 Cal. App. 466, 120 P. 43.

The right of a surety to be subrogated to the rights of the laborers and materialmen whose claims it has paid pursuant to the terms of its bond is declared in section 2848 of the Civil Code of California, as follows: "A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended. * * *" See, also, Allen v. Freear, 50 Cal. App. 645, 647, 195 P. 748; T. H. Mastin & Co. v. Pickering Lbr. Co. (D. C.) 2 F. Supp. 605; In re Estate of Elizalde, 182 Cal. 427, 433, 188 P. 560.

In considering the effect of the incident of bankruptcy proceedings during the period that the surety was completing the work, it is only necessary to say that the rights of the surety relate back to the original contract in taking over the work and completing it, and in paying the demands for labor and material it was merely doing that which it had agreed to do on June 11, 1929. The second assignment made by the bankrupt on October 17, 1929, having occurred after the filing of the petition in bankruptcy, would have no effect on the right of the trustee save and except that such an assignment made at that time was a confirmation of the right of the surety to complete the job as it had undertaken to do on September 25, 1929, no doubt with the consent of the bankrupt.

The appellant contends that in our previous decision in this case, Street v. Pacific Ind. Co., 61 F.(2d) 106, 110, it was determined that the assignment of June 11, 1929, was void and of no effect. As we have already pointed out, it is immaterial whether this contract is void or valid because the appellee is entitled to subrogation under the general principles of equity. It should be observed, however, that on the previous appeal we were dealing with the question of jurisdiction of the bankruptcy court to determine the rights of the parties in a summary proceeding. It was contended in the prior proceeding that on the day the petition in bankruptcy was filed there was due on the contract the sum of $6,327.07 which was later paid to the appellee. It now appears from the record that at the time the bankruptcy proceeding was filed the surety was engaged in completing the contract because of the default of the bankrupt. We said on the prior appeal: "Had it appeared from the record that the bankrupt had abandoned the contract and that the work was completed by appellee after the filing of the petition in bankruptcy, thus depriving the bankrupt of any further participation in the funds to become due on the contract, a different situation would have been presented. In the absence of such a showing, the sole question presented on the admitted facts is as to the situation at the time the petition was filed."

Appellant attacks certain expenditures by the indemnity company in the completion of the job, as follows: $175.22 paid to an attorney; $866.49 travel and living expenses for the engineer and superintendent employed by the appellee; $216.98 for the use of an automobile belonging to the appellee; certain items for public liability and property damage insurance covering trucks used on the job; $325 paid by the appellee for a caterpillar tractor known as a bulldozer. This tractor had been purchased by the contractor on a conditional sales contract and possession of the tractor had been taken by the seller. The appellee paid the balance due and secured posses-

sion of the bulldozer and used it in the completion of the work. It is stipulated that the amount of $325 paid by the appellant was the reasonable value of the use of the tractor in the completion of the work. These claims were approved by the lower court, and it is sufficient for us to say they were amounts actually and reasonably expended in the completion of the work. If the engineer required as consideration of the performance of the work on his part that his hotel bill be paid, payment thereof by the appellee was a part of the cost of the completion of the work.

One of the items paid by the county of Alameda which came into the possession of the indemnity company was the sum of $1,093.04 paid September 25, 1929, and turned over on that date to the indemnity company for the payment of labor claims which had accrued on the work at that time. The money was paid out by the indemnity company upon these claims. Appellant claims this was a preferential payment and therefore recoverable by the trustee because of the knowledge on the part of the indemnity company that at that time Collins was insolvent. If, as appears, it was agreed between Collins and the indemnity company at the time this money was turned over to it that it should be paid on these labor claims, as it was, the indemnity company was merely agent of the contractor in paying claims which were rightfully entitled to be paid from the funds due from the county for the performance of the contract. This fund could not be recovered from the agent. If we assume that the payment was made to the indemnity company, not as the agent of the contractor, but in its own right, the indemnity company, by the immediate payment of the fund to the laborers who had performed work upon the contract, was subrogated to the rights of such laborers and was entitled to set up that fact in this proceeding for a turnover order. These claims of laborers and materialmen were entitled to be paid from the contract price before the trustee in bankruptcy, representing general creditors, had any claim thereto. The trustee was not appointed until January 7, 1931, and the adjudication of bankruptcy was made November 26, 1930, long after the completion of the work, and the collection and expenditure of these funds by the indemnity company. The payments made were the fruit of the efforts of the indemnity company without which no payments

could have been collected. The bankrupt has no right to the funds paid to the indemnity company, nor has any creditor any right superior to the claims of the indemnity company.

Order affirmed.