## CALIFORNIA BANK v. UNITED STATES FIDELITY & GUARANTY CO.

### No. 10020.

Circuit Court of Appeals, Ninth Circuit.

July 27, 1942.

Swanwick, Donnelly & Proudfit, Charles E. Donnelly, R. W. Proudfit, Donald O. Welton and Tom W. Henderson, all of Los Angeles, Cal., for appellant.

Gerald F. H. Delamer, Walter O. Schell, and Carleton B. Wood, all of Los Angeles, Cal., for appellee.

Before MATHEWS, HANEY, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

In September, 1937, Nels A. Anderson, a citizen of California, made two contracts with the United States. Thereby Anderson agreed to construct in California certain buildings for the United States, and the United States agreed to pay Anderson therefor amounts aggregating $141,000. As required by § 1(a) of the Act of August 24, 1935, c. 642, 49 Stat. 793, 40 U.S.C.A. § 270a(a), Anderson furnished to the United States two performance bonds in amounts aggregating $72,000 for the protection of the United States[1] and two payment bonds in amounts aggregating $70,500 for the protection of all persons supplying labor and material in the prosecution of the work provided for in the contracts for the use of each such person.[2] Appellee, United States Fidelity & Guaranty Company, a Maryland corporation doing business in California, was surety on each bond. The bonds were executed in California.

The work provided for in the contracts was completed by Anderson on May 26, 1938. The United States paid Anderson the contract price ($141,000) as follows: $103,829.96 prior to June 30, 1938, $28,815.04 on June 30, 1938, $7,665 on March

---

[1] See paragraph (1) of § 1(a).    [2] See paragraph (2) of § 1(a).

4, 1939, and $690 on May 6, 1939. At the time he received the $28,815.04, Anderson owed that amount, and more, to persons supplying labor and material in the prosecution of the work and owed appellant, California Bank, a California corporation, $12,114.34. Upon receiving the $28,815.04, Anderson paid in full his indebtedness to appellant, his indebtedness for labor and all but $21,609.28 of his indebtedness for material. The $21,609.28 was paid by appellee, as Anderson's surety, between October 6, 1938, and November 21, 1938. In partial reimbursement thereof, Anderson paid appellee $10,655, leaving the balance ($10,954.28) unpaid.

To recover this balance, plus expenses aggregating $22 incurred by appellee in the investigation and payment of claims against Anderson—a total of $10,976.28—appellee brought an action against Anderson and appellant in the District Court of the United States for the Southern District of California. Anderson defaulted, appellant answered, jury trial was waived, the case was tried by the court, findings of fact and conclusions of law were made and filed, and judgment was entered in favor of appellee against both defendants for $10,976.28, with interest and costs. Appellant seeks reversal.

The judgment, in effect, requires appellant to hand over to appellee $10,976.28 of the $12,114.34 which Anderson paid appellant on June 30, 1938. In justification of this, appellee asserts that the $12,114.34 was part of a sum which Anderson had assigned to appellee by written assignments contained in applications whereby he induced appellee to become his surety on the bonds above mentioned. The applications were executed in California in September, 1937. Each contained the following provision:

"[Anderson] hereby agrees * * * to indemnify the Company [appellee] against all loss, damages, claims, suits, costs and expenses whatever * * * which the Company may sustain or incur by reason of executing or procuring said bond,[3] or making any investigation on account of same * * * or settling any claim * * * in connection with same * * * and does hereby assign and convey to the Company as collateral to secure the obligations herein and any other indebtedness or liabilities of [Anderson] to the Company, whether heretofore or hereafter incurred, all the right, title and interest of [Anderson] in and to (a) said contract[4] and any change, addition, substitution or new contract (including all retained percentages, deferred payments, earned moneys and all moneys and properties that may be due or become due under said contract, change, addition, substitution or new contract) * * * such assignment to be effective as of the date of the construction contract, but only in event of (1) any breach of any of the agreements herein contained or of said contract or performance bond or of any other bond executed or procured by the Company on behalf of [Anderson] * * *."

■ Thus the applications purported to assign to appellee claims upon the United States which had not been allowed and were not yet due, and for the payment of which no warrant had been issued. By § 3477 of the Revised Statutes, 31 U.S.C.A. § 203,[5] such assignments are declared to be "absolutely null and void." Section 3477 is for the protection of the United States. Goodman v. Niblack, 102 U.S. 556, 560, 26 L.Ed. 229; Bailey v. United States, 109 U.S. 432, 435–440, 3 S.Ct. 272, 27 L.Ed. 988; Hobbs v. McLean, 117 U.S. 567, 576, 6 S.Ct. 870, 29 L.Ed. 940; Freedman's Savings & Trust Co. v. Shepherd, 127 U.S. 494, 505, 506, 8 S.Ct. 1250, 32 L.Ed. 163; Price v. Forrest, 173 U.S. 410, 423, 19 S.Ct. 434, 43 L.Ed. 749; McGowan v. Parish, 237 U.S. 285, 294, 35 S.Ct. 543, 59 L.Ed. 955; Martin v. National Surety Co., 300 U.S. 588, 594–598, 57 S.Ct. 531, 81

---

[3] The bonds referred to in the applications were the two performance bonds and the two payment bonds hereinabove mentioned.

[4] The contracts referred to in the applications were the two construction contracts hereinabove mentioned.

[5] "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share, thereof, [with inapplicable exceptions], shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof."

L.Ed. 822. The United States may waive that protection and, though not required to do so, may recognize and give effect to an assignment prohibited by § 3477. Bailey v. United States, supra; Freedman's Savings & Trust Co. v. Shepherd, supra; Martin v. National Surety Co., supra. In this case, the United States did not waive the protection of § 3477, but, availing itself thereof, disregarded the assignments. Thus all sums due under the contracts were paid to Anderson instead of appellee.

■ Upon receiving these sums, Anderson could have disposed of them in accordance with the assignments, and could have been required to do so; for, despite § 3477, the assignments were valid against Anderson. Martin v. National Surety Co., supra. That is not disputed. The question is whether the assignments were valid against appellant.

■ The assignments undoubtedly would have been valid against appellant if appellant had had notice thereof before Anderson's indebtedness to appellant was incurred. Martin v. National Surety Co., supra. Actually, however, appellant had no notice of the assignments until July 19, 1938. Meanwhile, in May and June, 1938, Anderson had incurred his indebtedness to appellant and, on June 30, 1938, had paid it in full. Thus appellant had no notice of the assignments until long after the indebtedness was paid. As to appellant, therefore, the assignments were void. Adamson v. Paonessa, 180 Cal. 157, 179 P. 880; Security Mortgage Co. v. Delfs, 47 Cal.App. 599, 191 P. 53.

Appellee contends, and correctly so, that it became subrogated to the rights of the materialmen whose claims it paid. Appellee, however, did not thereby acquire the right to recover of appellant the amounts paid the materialmen; for the materialmen themselves never had any such right. Their claims were against Anderson, not against appellant. Appellant never owed the materialmen anything.

This was not an action by a trustee in bankruptcy to avoid a transfer or recover a payment made by a bankrupt.[6] Anderson, so far as the record shows, was never adjudged a bankrupt. Nor was this an action under the California Fraudulent Conveyance Act, Civil Code, §§ 3439.01 to 3439.12. Appellee did not allege or prove, nor did the court find, that the payment of $12,114.34 to appellant on June 30, 1938, was made without a fair consideration[7] or with intent to hinder, delay or defraud creditors.[8] No fact or facts warranting recovery under the Fraudulent Conveyance Act are disclosed by the record.

The court found that, at the time Anderson paid the $12,114.34 to appellant, appellant "did not part with any new consideration on account of said payment to it, but that said payment was made by [Anderson] on account of [Anderson's] prior indebtedness" to appellant. We construe this to mean that the sole consideration for the payment of Anderson's indebtedness to appellant was the satisfaction thereof. So construed, the finding is correct. The consideration mentioned—the satisfaction of said indebtedness—was a fair consideration.[9] No other consideration was necessary.

Appellee contends, and correctly so, that, having paid materialmen's claims aggregating $21,609.28, it became subrogated to the rights of the United States in respect of such claims. The question is, What were those rights?

The contracts provided for the construction of 49 buildings for $141,000.[10] Each contract provided that payments thereunder "will be made as the work progresses at the end of each calendar month, or as soon thereafter as practicable, on estimates made and approved by the contracting officer,"[11] and that, "In making such partial payments there shall be retained 10 per cent on the estimated amount until final completion and acceptance of all work covered by the contract; provided, however, that the contracting officer, at any time after 50 per cent of the work has been completed, if he finds that satisfactory progress is being made, may make any of the remaining partial payments in full."

Thus the United States, by the terms of the contracts, had the right to retain until the work was completed, and as se-

---

[6] Bankruptcy Act, §§ 60, 67, 70, 11 U.S.C.A. §§ 96, 107, 110.
[7] California Civil Code, § 3439.04.
[8] Id., § 3439.07.
[9] Id., § 3439.03.
[10] One contract provided for the construction of 48 buildings for $128,800. The other provided for the construction of one building for $12,200.

[11] The Chief Engineer of the Bureau of Reclamation, Department of the Interior.

curity[12] for its completion, 10% ($14,100) of the contract price, thus protecting itself against the possibility that it (the United States) might have to complete the work at its own expense. Prairie State National Bank v. United States, 164 U.S. 227, 230–240, 17 S.Ct. 142, 41 L.Ed. 412. If Anderson had failed to complete the work, and if appellee, as his surety, had completed it, appellee would have been subrogated to that right. Prairie State National Bank v. United States, supra.

Actually, however, there was no failure to complete the work. The work was completed on May 26, 1938. It was completed by Anderson, not by appellee. The United States retained the $14,100 until the work was completed and for 35 days thereafter. Then, on June 30, 1938, it paid Anderson the $14,100 and an additional $14,715.04—a total of $28,815.04. Its right to retain the $14,100 as security for the completion of the work ended when the work was completed. Obviously, therefore, appellee never became subrogated to that right.

Neither of the contracts provided for the retention of 10%, or any part, of the contract price as security for the payment of materialmen's claims. Materialmen's claims were not mentioned in either contract. The provisions above quoted, authorizing retention of 10% of the contract price, did not relate to materialmen's claims. Hence appellee derived no right therefrom, by subrogation or otherwise.

On May 26, 1938, Anderson was in default in the payment of materialmen's claims (subsequently paid by appellee) aggregating $21,609.28.[13] Though not legally obligated to pay these claims, the United States had an equitable obligation to see that they were paid. Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 409–412, 28 S.Ct. 389, 52 L.Ed. 547. It consequently had the right to retain, as security for their payment, the then unpaid part ($37,170.04)[14] of the contract price; and appellee, when it paid the claims, became subrogated to that right. Henningsen v. United States Fidelity & Guaranty Co., supra; Hardaway v. National Surety Co., 211 U.S. 552, 561, 562, 29 S.Ct. 202, 53 L.Ed. 321. See, also, Maryland Casualty Co. v. Shafer, 57 Cal.App. 580, 208 P. 192; Castro v. Malcolm, 66 Cal. App. 635, 226 P. 976.

Thus, in consequence of Anderson's default, the $37,170.04 then in the hands of the United States became a fund which the United States was entitled to apply to the payment of materialmen's claims, and which appellee, as subrogee of the United States, was entitled to have applied in reimbursement of the $21,609.28 expended by it in paying such claims; and appellee's right to have the fund so applied was superior to any right of Anderson or Anderson's assignees—if any.[15] See authorities last hereinabove cited.

The United States retained the fund ($37,170.04) until June 30, 1938. On that date, before any claim was paid by appellee, the United States paid Anderson $28,-815.04[16] from the fund; and, on the same day, Anderson paid $12,114.34 thereof to appellant. Subsequently, after all the claims were paid by appellee,[17] the United States paid Anderson the balance of the fund ($8,355),[18] and Anderson paid it to appellee. Thereby, and by other payments received from Anderson, appellee's claim against the fund was reduced from $21,-609.28 to $10,976.28.

Appellee contends (1) that the $12,114.34 now in appellant's hands is still a part of the fund, and (2) that appellee is entitled to have its claim paid from that part of the fund.

The $12,114.34 would still be a part of the fund if it were still in the hands of the United States (Prairie State National Bank v. United States, supra; Henningsen v. United States Fidelity & Guaranty Co., supra; Hardaway v. National Surety Co., supra),[19] or in the hands of Anderson's

---

[12] This security was in addition to that afforded by the performance bonds furnished by Anderson, with appellee as surety.

[13] Other claims, then in default, were subsequently paid by Anderson and are not here involved.

[14] Including the $14,100 which had been retained as security for the completion of the work.

[15] Anderson, so far as the record shows, had no assignee except appellee.

[16] Including the $14,100 hereinabove mentioned.

[17] The earliest payment by appellee was on October 6, 1938. The latest was on November 21, 1938.

[18] In two payments—$7,665 on March 4, 1939, and $690 on May 6, 1939.

[19] See, also, Maryland Casualty Co. v.

trustee in bankruptcy[20] (In re Scofield Co., 2 Cir., 215 F. 45, 48–50; In re P. McGarry & Son, 7 Cir., 240 F. 400; Cox v. New England Equitable Ins. Co., 8 Cir., 247 F. 955, 957; London & Lancashire Indemnity Co. v. Endres, 8 Cir., 290 F. 98, 102, 103), or in the hands of a receiver (Hardaway v. National Surety Co., supra; Moran v. Guardian Casualty Co., 64 App. D.C. 188, 76 F.2d 438), or in the hands of a stakeholder (Henningsen v. United States Fidelity & Guaranty Co., supra); but the $12,114.34 is not in the hands of the United States, or of a trustee, receiver or stakeholder. It is in appellant's hands.

Appellant is not here demanding or attempting to recover the $12,114.34, as in the Prairie Bank, Henningsen, Hardaway, Moran, Shafer and Castro cases, supra. Appellant already has the $12,114.34. Appellee is attempting to recover a part ($10,976.28) thereof from appellant. The question is whether such recovery is warranted.

Appellant received the $12,114.34 from Anderson on June 30, 1938, in payment of a debt of $12,114.34 then due and owing by Anderson to appellant. As to the existence, validity and bona fide character of the debt, no question is raised. At the time it received the $12,114.34, appellant knew that Anderson had received it from the United States under the aforesaid contracts; but appellant had no notice or knowledge of Anderson's default until July 19, 1938—nineteen days after it received the $12,114.34. Thus appellant received the $12,114.34 without notice or knowledge that it was part of a fund in which appellee had, or might thereafter acquire, a superior right. We hold, therefore, that appellee is not entitled to recover any part of the $12,114.34 from appellant. Kane v. First National Bank, 5 Cir., 56 F.2d 534, 85 A.L.R. 362; Third National Bank v. Detroit Fidelity & Surety Co., 5 Cir., 65 F.2d 548; Fidelity & Deposit Co.

v. Union State Bank, D.C.Minn., 21 F.2d 102, 104–106; Maryland Casualty Co. v. Lincoln Bank & Trust Co., D.C.W.D.Ky., 40 F.Supp. 782, 785. See, also, American Surety Co. v. Bank of Italy, 63 Cal.App. 149, 218 P. 466.

Appellee's right in the fund was acquired by subrogation long after appellant received the $12,114.34. Appellee, however, contends that its right relates back to the date of the bonds. That is true as to Anderson and as to claimants standing in Anderson's shoes—as, for example, an assignee[21] claiming the fund by virtue of an assignment of Anderson's rights under the contracts[22]—but not as to appellant; for the doctrine of relation cannot be used by a subrogee for the purpose of recovering money paid to a creditor without notice, in satisfaction of a just debt, prior to the maturing of any right of subrogation. Fidelity & Deposit Co. v. Union State Bank, supra. See, also, United States Fidelity & Guaranty Co. v. Wooldridge, 268 U.S. 234, 238, 45 S.Ct. 489, 69 L.Ed. 932, 40 A.L.R. 1094.

In support of its contention that recovery may be had despite lack of notice, appellee cites In re Scofield Co., supra; In re P. McGarry & Son,[23] supra; Cox v. New England Equitable Ins. Co., supra; and London & Lancashire Indemnity Co. v. Endres, supra. These were bankruptcy cases. In each of them, the fund in controversy was in the hands of a contractor's trustee in bankruptcy. The trustee's title to the fund being the same as, and no better than, that of the contractor (Bankruptcy Act, § 70, 11 U.S.C.A. § 110), the right of the contractor's surety was superior. The case at bar is not a bankruptcy case. The Scofield, McGarry, Cox and Endres cases, therefore, are not in point.

The judgment, in so far as it relates to appellant, is reversed, and the case is remanded for dismissal as to appellant.

---

Shafer, supra; Castro v. Malcolm, supra.

[20] Anderson, so far as the record shows, has not been adjudged a bankrupt.

[21] See footnote 15.

[22] As in the Prairie Bank, Henningsen, Hardaway, Moran, Shafer and Castro cases, supra.

[23] Cited by appellee as American Bonding Co. v. Central Trust Co., 7 Cir., 240 F. 400.