## MARYLAND CASUALTY CO. v. LINCOLN BANK & TRUST CO.

### No. 1052.

District Court, W. D. Kentucky, Louisville.
Sept. 25, 1941.

Robert P. Hobson and James E. Fahey (of Woodward, Dawson & Hobson), of Louisville, Ky., for plaintiff.

Edward P. Humphrey, Alex P. Humphrey, and Sam Steinfeld, all of Louisville, Ky., for defendant.

SWINFORD, District Judge.

On December 6, 1933, C. J. Redmon, doing business under the name of Redmon Heating Company, was awarded a contract by the United States Government to do a certain part of the construction work on a Government project in Roanoke, Virginia. Under the terms of the statute, Redmon on December 13, 1933, executed bond to the Government for the performance of his contract. 40 U.S.C.A. § 270. On February 23, 1934, Redmon exercised an optional provision in the contract and executed a second bond.

The bonds provided that the contractor, "shall faithfully make payment to all persons supplying the principal with labor and materials in the prosecution of the work provided in said contract, or any authorized extension or modification thereof." Upon written application by Redmon the plaintiff, the Maryland Casualty Company, signed the bonds as surety.

The application for each bond contained the following provision: "In the event of claim or default under the bond herein applied for, or in the event the undersigned shall fail to fulfill any of the obligations assumed under the said contract and bond, or in the event of claim or default in connection with any other former or subsequent bonds executed for us or at our instance and request all payments due or to become due under the contract covered by the bond herein applied for, shall be paid to the Company, and this covenant shall operate as an assignment thereof and the residue, if any, after reimbursing the Company as aforesaid, shall be paid to the undersigned after all liability of the Company has ceased to exist under the said bonds, and the Company shall at its option be subrogated to all rights, properties and interest of the undersigned in said contract or contracts."

Redmon had for a number of years been a customer of the defendant, Lincoln Bank & Trust Company. Before signing the bonds referred to the plaintiff through its local agent called upon the defendant and discussed with one of its vice-presidents the fact that application had been made to it to become surety on Redmon's bond or bonds under his contract with the Government for the Roanoke project. This discussion was principally for the purpose of verifying certain items in the financial statement contained in the application. The section of the application providing for the assignment, which I have quoted above, was not shown to nor called directly to the attention of the officer of the defendant.

Redmon commenced work on the Roanoke project in the early part of 1934 and continued until June 1, 1934. On June 26, 1934, he formally defaulted and the plaintiff took over the job for completion.

On December 26, 1933, Redmon executed a note to the defendant for $4,250. January 29, 1934, he executed a second note to the defendant for $3,000. Renewals of these notes continued at thirty-day intervals until May 25, 1934, when a note for $3,600 matured and May 31, 1934, when a note for $3,650 matured. The defendant declined to renew these notes. The defendant gives as its reason for declining that Redmon would not submit a financial statement which it required. The plaintiff contends impliedly that the reason for the failure to renew was because the defendant knew that Redmon was in straitened financial circumstances. At the time the second note matured Redmon had on deposit in the defendant bank the sum of $5,045.34. The situation resulted in the following solution:

The bank issued a check for $5,500 to Mrs. Appalona Redmon, the wife of the contractor. This check was immediately endorsed by Mrs. Redmon and deposited to Mr. Redmon's account. This made a balance in that account of $10,545.34. The aggregate of the two past due notes for $7,254.82 was then charged to that account, leaving a balance of $2,290.52. To secure

the note evidencing this loan of $5,500, Mrs. Redmon executed to the bank a mortgage on her home which was of ample value. The note was payable in six (6) months.

In May of 1934 Redmon had received a check from the Government as a progress payment on the Roanoke job. With this sum he paid certain creditors for obligations incurred on this project but in violation of his agreement with the Government and with the plaintiff left unpaid a portion due to labor and materialmen in the approximate amount of $2,800.

On June 11, 1934, Redmon received a second progress payment from the Government on the Roanoke project in the amount of $6,147. He deposited this check in the defendant bank and immediately paid the note against his wife for $5,500 out of this sum by giving a check on his account. The defendant thereupon released its mortgage.

It should be noted that at the time of all of these transactions Redmon was engaged on several other non-Government jobs and this fact was known to the defendant.

It is the plaintiff's contention that it is entitled to recover from the defendant that portion of the second progress payment received by the contractor of June 11, 1934, which was used on the day of its receipt to retire the mortgage loan because:

1. The bank received this money from funds which can be directly traced to the second progress payment.

2. The money was received by the bank with full knowledge of its source and that claims of materialmen were left unpaid.

3. The money was impressed with an equitable lien in favor of the unpaid materialmen whose claims arose prior to and formed the basis of the progress payment, but whose claims were unsatisfied.

4. When these claims were paid by the plaintiff it was subrogated to the materialmen's equitable lien on this fund.

5. These equitable liens were not defeated by the transfer of the money from the contractor to the bank.

In addition, it should be noted that the plaintiff alleges in its complaint that the defendant bank "extended said credit until the money could be received, and with full knowledge as to its origin, and in collusion with said contractor, said money was paid to said Bank in extinguishment of said mortgage * * *."

■ The record clearly establishes the first of these propositions to be true. In fact there is not nor could there be dispute over this fact. The check showing its source on its face was deposited with the defendant bank. That alone is sufficient to establish knowledge of the source of the fund. The account enhanced or created by this deposit was immediately drawn upon to pay the $5,500 indebtedness.

■ The fourth and fifth contentions are well settled as matters of law, that the surety is subrogated to the materialmen's rights in such fund and that the transfer of the money from the contractor to the bank of itself discharges no equities attached to the fund. Riverview State Bank v. Wentz et al., 8 Cir., 34 F.2d 419; United States Fidelity & Guaranty Co. v. Sweeney et al., 8 Cir., 80 F.2d 235; Martin v. National Surety Company, 8 Cir., 85 F.2d 135; Martin v. National Surety Company, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822.

■ As to the second contention the proof establishes beyond doubt that the bank received the funds with knowledge of their source, as I have pointed out above in commenting on the first contention. However, I am of the opinion that the record fails to sustain the plaintiff's assertion that the bank accepted the funds with knowledge that the materialmen were left unpaid. The burden is upon the plaintiff and while the circumstances surrounding the dealings of the bank and Redmon may remotely support such an argument in my judgment such an inference entirely fails.

Redmon had been doing business for many years with the defendant. He had an established line of credit. He had at the time many jobs other than the Roanoke job under construction. He testifies on cross-examination, which is convincing to me, that he did not tell the defendant's officer when he discussed renewing his notes that he would pay them out of a Government progress payment. There is no proof other than Redmon's on which to base such a contention. Mr. Scott, the officer of the defendant with whom the renewals were discussed, expressly says no such representation was made. Redmon upon cross-examination refutes his testimony on direct examination and expressly corroborates Scott. The most reasonable inference would be that no such statement was made. Several other private projects were under way. It was manifestly the intention of Redmon to

relieve his wife's real estate of debt at the earliest opportunity wherever the money might come from. It is thus unreasonable to suppose that he advised the bank that he would pay it out of any certain sum.

Neither is there anything in the record to convince me that the bank knew that Redmon had defaulted or quit the job on June 11, 1934. No formal default was had until June 26. Work had only been stopped since June first. The project was several hundred miles from the home of the defendant. I think the proof fails in this respect.

This is not a case in which creditors are disputing the question of priorities over a retained percentage. In such a case the plaintiff would have a superior lien. Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547. The money here had actually been paid by the Government to the contractor who put it on deposit and gave a personal check to the bank.

■ I do not believe that the bank was compelled to refuse to accept the money until it had investigated to determine whether or not the fund was impressed with equities in favor of the materialmen unless it had notice that there were these outstanding obligations.

The plaintiff here relies on the case of Martin v. National Surety Company, 1937, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822. An analysis of that case reveals that there was presented a much different state of facts. Martin was the agent for the bonding company. Tobin, a contractor, had made a contract with the Government to do certain construction work. The bond required of Tobin by the Government, contained a condition that the contractor would promptly make payment from progress payments to all persons supplying labor and materials in the prosecution of the work. 40 U.S.C.A. § 270; American Surety Company v. Westinghouse Electric Mfg. Co., 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105. The bond so required of Tobin was signed by the National Surety Company acting through Martin its agent. One of the officers of the surety company had ordered Martin not to execute the bond, but Martin disobeyed the order.

The obligee under the bond was ignorant of this instruction from the company to its agent and it was conceded that the company was liable on the bond. As in the instant case as a further consideration for the bond the contractor by the same instrument assigned the payments from the Government to the surety in the event of any breach or default in the contract, the proceeds to be credited upon any loss which the surety might sustain. As a result of Martin's disobedience of instructions not to sign the bond he was discharged and his agency cancelled.

With full knowledge and notice of the terms of the application which he had approved as agent for the surety company and under an agreement with Tobin for a division of the profits of the enterprise, Martin personally loaned money to Tobin in excess of $10,000. When the work was near completion the surety became alarmed and gave notice to Tobin that a power of attorney must be executed to it to collect any remaining payments due from the Government. Bills for labor and materialmen were at that time largely in default. Instead of executing a power of attorney to the surety company Tobin executed to Martin personally a power of attorney and gave him a letter addressed to the Treasury Department, from which the Government payments were to come, directing that all checks for Tobin should thereafter go to Martin. The surety did not know of these documents. Martin immediately went to Washington and collected from the Government $10,418.10, the progress or deferred payments then due Tobin on the contract. Tobin was insolvent and defaulted in his payments due labor and materialmen. The surety company sued Martin to recover the amount so collected in favor of its obligation to the labor and materialmen.

It was held that the fund was impressed with an equitable lien in favor of these named creditors for labor and material and that Martin having acquired the fund with notice of these equities must surrender the fund.

■ The Martin case contains an accumulation of authorities on the questions presented here. It is the last word on the subject and discusses the diversity of opinion from the various Circuit Courts of Appeals. It lays down the rule that [300 U.S. 588, 57 S.Ct. 535, 81 L.Ed. 822]: "An assignment ineffective at law may none the less amount to the creation of an equitable lien when the subject matter of the assignment has been reduced to possession and is in the hands of the assignor or of persons

claiming under him with notice." Citing: Western Union Telegraph Company v. Shepard, 169 N.Y. 170, 62 N.E. 154, 58 L.R.A. 115; Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865; Fourth Street Bank v. Yardley, 165 U.S. 634, 17 S.Ct. 439, 41 L.Ed. 855; Ketchum v. St. Louis, 101 U.S. 306, 25 L.Ed. 999.

In referring to the case and opinion from the Eighth Circuit to which certiorari was granted (85 F.2d 135), the Supreme Court in its opinion said: "It placed its ruling upon the broad ground that, apart from any assignment or any statute, the proceeds of a building contract are chargeable in favor of materialmen with an equitable lien, which attaches upon collection, even if not before, and which cannot be overridden at the will of the contractor by payment to his other creditors, though the payment be made in fulfillment of a promise. For this it cited Belknap Hardware & Mfg. Co. v. Ohio River Contract Co. [6 Cir.], 271 F. 144, and United States Fidelity & Guaranty Co. v. Sweeney [8 Cir.], 80 F.2d 235, 238, conceding the existence of other cases contra; Third National Bank v. Detroit Fidelity & Surety Co. [5 Cir.], 65 F.2d 548; Kane v. First National Bank of El Paso [5 Cir.], 56 F.2d 534, 85 A.L.R. 362; Fidelity & Deposit Co. v. Union State Bank (D.C.), 21 F.2d 102. The opinion dwells upon the confusion in which the subject is enveloped. We granted certiorari."

It is my judgment that the decision in the Supreme Court narrowed this very broad statement. It will be noted that there is no reference to notice or knowledge in this reference to the Circuit Court of Appeals decision. Immediately following this paragraph in the opinion the Court makes this pointed and to me significant observation: "Our decision will be kept within the necessities of the specific controversy here. Even so, the grounds chosen, though narrower than those assigned below, may be expected to be helpful as a guide in other cases."

It should be pointed out that there is no statutory lien on which the plaintiff is relying. It is an equitable lien and such a theory necessarily contemplates notice to one into whose hands there comes a fund charged with a prior claim. Certainly equity would not place upon the recipient of the payment of a bona fide debt the obligation of refusing to accept money due, until it had made inquiry as to who were other creditors and why they were claiming all or a part of the fund. Such a position certainly does not sound in equity. This bank loaned the money in good faith, accepted a negotiable check for the discharge of its debt and released its security. Now the surety company which had been paid for guaranteeing to the Government that the contractor would fulfill all the requirements of his bond claims that the bank should have refused these payments because it knew of the source of the fund from which it was paid. The knowledge or notice spoken of in the Supreme Court opinion referred to knowledge or notice of these hidden equities in the form of obligations for material, not to notice and knowledge that the fund was from the Government and in part payment for a Government contract. Such a ruling would present an intolerable situation. No contractor on a Government job could get a line of credit at a bank or other money lending institution. No debt could be paid nor money accepted until all liabilities were determined. Such a course might be wise but it should be by statute and thereby notify lending agencies that all money offered by a Government contractor from money received was "tainted" with "equities" until it had proved itself otherwise.

I think the decision in the Martin case was influenced entirely by the fact that Martin in his double dealing was bound to know that there were outstanding obligations for labor and material and, by accepting a fund impressed with these prior claims which he had expressly contracted would be prior and that an assignment would go to the surety in case of default, could not in "equity" retain the fund.

The evidence offered by the plaintiff to establish such knowledge on the part of the defendant is entirely unimpressive. Mr. Atkisson, the agent for the plaintiff, called upon the bank before his execution of the bond for the sole purpose of checking certain items of credit which Redmon had listed in his application. He went to the bank to find out something not to tell the bank something. His testimony clearly establishes that no notice either directly or indirectly was brought to the bank of the provisions of the application and the bond in which it was incorporated for an assignment of payments in case of default. This Court through a former judge sustained a motion to dismiss the complaint. 18 F. Supp. 375. This ruling was reversed in

Maryland Casualty Company v. Lincoln Bank & Trust Company, 6 Cir., 103 F.2d 1016. Since the complaint alleged knowledge on the part of the defendant and collusion between the bank and contractor it stated a cause of action.

On the whole case the evidence is not sufficient to sustain the burden of proof placed upon the plaintiff in establishing the allegations of its complaint and the complaint should be dismissed.

Findings of fact, conclusions of law and judgment should be submitted in accordance with this opinion.