The **BANK OF ARIZONA**, a Corporation, Appellant,

v.

**NATIONAL SURETY CORPORATION**, a Corporation, Appellee.

No. 14903.

United States Court of Appeals Ninth Circuit.

Aug. 31, 1956.

As Amended Oct. 5, 1956.

Favour & Quail, John M. Favour, Prescott, Ariz., for appellant.

Moore & Romley, Phoenix, Ariz., for appellee.

Before STEPHENS and BONE, Circuit Judges, and GOODMAN, District Judge.

BONE, Circuit Judge.

On this appeal we are called upon to determine the validity of conflicting claims to moneys paid by the Government pursuant to a contract. One claim is founded on an assignment to a surety contained in the application for a contract bond; the other founded on an assignment to a bank, given as consideration for moneys loaned to the contractor. The sequence of events makes their dates assume significance. For convenience parties here involved will be referred to as follows: National Surety Corporation as "Surety"; The Bank of Arizona as "Bank"; Dollar Construction Co., a corporation as "Contractor"; and the United States of America as "Government."

On June 18, 1952, Contractor entered into a contract with Government (hereafter called "contract"), whereby Contractor agreed to perform work at the Navajo Ordnance Depot, Bellemont, Arizona (hereafter called the "Navajo Job"), in consideration for which Government agreed to pay Contractor $12,180.00 in a lump sum on completion of the job, this amount being later increased by a "Change Order" to $12,-580.00. In conformity with the requirements of 40 U.S.C.A. § 270a and provisions of the contract, Contractor furnished and Government accepted and approved, a performance bond and a payment bond executed by Contractor and Surety, each in the penal sum of $6,090.00.

Contractor completed the Navajo Job on October 20, 1952, and the work was certified by Government as meeting the plans and specifications of the contract. Being in need of money, Contractor secured a loan from Bank in the amount of $10,000 and the proceeds were deposited to the credit of Contractor's then existing account with Bank. Contractor stated to Bank that the purpose of the loan was to pay materialmen, but Bank did not know and did not ascertain how much of the loan would be needed for that purpose. It learned from the contracting officer at the Navajo Ordnance Depot that the contract had been completed and that the proceeds of the contract were shortly to be forthcoming. The contracting officer approved and accepted the assignment to Bank on October 22, 1952.

Bank ascertained prior to making the loan that the Contractor had furnished a payment bond to protect the laborers and materialmen, although Bank had no actual knowledge of the identity of the Surety on the bond.

On or about December 9, 1952, Bank delivered a formal written notice of the assignment to the Government contracting officer at the Navajo Ordnance Depot, and mailed notice of the assignment together with a true copy of the instrument of assignment to the *then known* Surety, which notice was received by Surety on December 10, 1952. Surety returned this notice to Bank with a form of acknowledgment which it prepared, which stated that Contractor "has been and is in default and owes in excess of $11,000 to persons who furnished labor and materials to the contractor in the prosecution of the work. * * * Subject to a complete reservation of all our rights [summarized in part in the

letter], receipt is hereby acknowledged of the above notice and a copy of the above mentioned instrument of assignment."

Bank also filed with the United States Army Finance Officer at Los Angeles, the disbursing officer designated in the contract to make payment, a copy of Contractor's assignment to it, together with a notice of assignment. These instruments were received by the Finance Officer on December 11, 1952. Government's check in the sum of $12,580.00 (the proceeds of the contract) was issued December 12, 1952, and received by Bank on December 15, 1952. On receipt of the check Bank applied $10,-139.51 of these contract proceeds in satisfaction of Contractor's loan obligation to Bank. Upon demand of Surety a cashier's check payable to Contractor for the remaining balance of the contract proceeds, $2,440.49 was mailed to Surety and was thereupon endorsed specially by Contractor and delivered to one materialman to reduce its claim.

Surety commenced this action against Bank and the five materialmen who had made claims against Surety on its payment bond. The aggregate of unpaid materialmen claims totaled $9,997.63 (after crediting the $2,440.49 to the claim of the one materialman). Concurrently with filing its complaint Surety deposited $6,090.00 (the full amount of the payment bond) with the clerk of the District Court. The complaint alleged that this sum was not sufficient to pay all persons who supplied labor and material in the prosecution of the work required by the contract; that the sum theretofore applied by Bank to the payment of its note was more than sufficient to discharge the unpaid obligations. Surety charged Bank with owing the materialmen the sum of $9,997.63 for money had and received from the United States of America.

The complaint of Surety alleged an assignment contained in the "Application for Contract Bond," whereby Contractor assigned to Surety any and all moneys due and payable to Contractor at the time of any breach or default in the contract to indemnify Surety for any liability Surety might incur by reason of having executed the performance bond and the payment bond; that Bank knew or should have known of this prior assignment of the contract proceeds to Surety at the time Bank took its assignment; that Bank knew or should have known that Surety was entitled to exoneration from its obligations to pay for labor and material and was entitled to subrogation and to a prior right in and claim to the contract funds.

Bank's answer placed in issue the aforesaid assignment of the contract proceeds to Surety and the amounts due to the materialmen. It admitted its said loan to Contractor and Contractor's assignment to Bank; alleged that such assignment was received in good faith, without notice, and permitted and perfected under the Assignment of Claims Act of 1940, 31 U.S.C.A. § 203. It denied the notice of and the existence of any rights of Surety by subrogation or exoneration.

At trial the District Court rendered judgment that Surety recover from Bank the sum of $6,090.00, the amount of the payment bond. This appeal followed.

Appellant Bank alleges error of the lower court in making that portion of the first conclusion of law that

"* * * by the payment into court by Surety of $6,090.00, which was the full amount of its penalty under the payment bond, Surety became subrogated to the right of the Government to have the contract proceeds applied in payment of the materialmen, said right of subrogation relates back to the date of the payment bond, June 18, 1952."

Bank relies on this claimed error for the reason that the payment of the contract proceeds by Government to Bank terminated any rights of the Government to the proceeds or the application thereof, and that any such rights could not be revived to enforce restitution, refund or repayment to the United States of the money paid to Bank, an assignee under

an assignment perfected under the Assignment of Claims Act of 1940, as amended.

Since the lower court concluded that Surety was subrogated to "the right of the Government to have the Contract proceeds applied in payment of the materialmen" it is necessary to determine "the right of the Government."

▮ The United States is not legally bound to pay the claims of materialmen. "If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation." United States v. Munsey Trust Co., 1947, 332 U.S. 234, 241, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022.

There is authority recognizing some sort of right in unpaid laborers and materialmen to portions of the contract proceeds retained by the Government.[1] Unfortunately, the cases are far from clear as to the classification of that interest. In the absence of definite contractual provisions, federal courts have labeled the right of labor and material suppliers to be paid from moneys withheld by the Government as a moral obligation,[2] as an equitable priority,[3] as an equitable obligation,[4] as something "in the nature" of an equitable lien,[5] and as an equitable lien.[6] Because of this confusion perhaps the only generalization to be drawn from the cases is that if the Government holds all or a part of the contract proceeds, it may apply the proceeds to the claims of unpaid materialmen, if any, and possibly may assert a right so to apply the proceeds still in its possession.

▮ But assuming for purpose of argument that Surety upon payment of the claims of materialmen could be subrogated to this "right" of the Government to apply the proceeds to materialmen, we believe Surety may not claim the contract proceeds here. When the Government paid the contract proceeds to Bank we believe the Government's interest in the proceeds and its right to apply the proceeds to unpaid materialmen ceased to

1. Henningsen v. United States Fidelity & Guaranty Co. of Baltimore, Maryland, 1908, 208 U.S. 404, 28 S.Ct. 389, 52 L. Ed. 547; Martin v. National Surety Co., 1937, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822; American Surety Co. of New York v. Westinghouse Electric Manufacturing Co., 1935, 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105; Belknap Hardware & Mfg. Co. v. Ohio River Contract Co., 6 Cir., 1921, 271 F. 144; Riverview State Bank v. Wentz, 8 Cir., 1929, 34 F.2d 419; United States Fidelity & Guaranty Co. v. Sweeney, 8 Cir., 1935, 80 F.2d 235; Maryland Casualty Co. v. Lincoln Bank & Trust Co., D.C.W.D.Ky.1941, 40 F. Supp. 782; In re Schofield Co., 2 Cir., 1914, 215 F. 45; In re P. McGarry & Son, 7 Cir., 1917, 240 F. 400; Cox v. New England Equitable Ins. Co., 8 Cir., 1917, 247 F. 955.

2. See American Surety Co. of New York v. Westinghouse Electric Mfg. Co., 5 Cir., 1935, 75 F.2d 377, 379; Belknap Hardware & Mfg. Co. v. Ohio River Contract Co., 6 Cir., 1921, 271 F. 144, 148.

3. Belknap Hardware & Mfg. Co. v. Ohio River Contract Co., footnote 2, supra, 271 F. at page 149.

4. Henningsen v. United States Fidelity & Guaranty Co. of Baltimore, Maryland, 1907, 208 U.S. 404, 410, 28 S.Ct. 389, 52 L.Ed. 547; Morgenthau v. Fidelity & Deposit Co., 1937, 68 App.D.C. 163, 94 F.2d 632, 635; American Surety Co. of New York v. Westinghouse Electric Mfg. Co., 5 Cir., 1935, 75 F. 2d 377; Belknap Hardware & Mfg. Co. v. Ohio River Contract Co., footnote 2, supra, 271 F. at page 151; see California Bank v. United States Fidelity & Guaranty Co., 9 Cir., 1942, 129 F.2d 751, 754.

5. Munsey Trust Co. of Washington, D. C. v. United States, 1946, 67 F.Supp. 976, 983, 107 Ct.Cl. 131, certiorari granted, 1947, 330 U.S. 814, 67 S.Ct. 863, 91 L. Ed. 1268, reversed, 1947, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022.

6. Morgenthau v. Fidelity & Deposit Co., footnote 4, supra, 94 F.2d at page 636; Moran v. Guardian Casualty Co., 1935, 64 App.D.C. 188, 76 F.2d 438; Philadelphia National Bank v. McKinlay, 1934, 63 App.D.C. 296, 72 F.2d 89, 91.

exist.[7] And when the Government's interest in the contract proceeds terminated there was no longer a Government "right" to which Surety could be subrogated. See United States v. Munsey Trust Co., 332 U.S. 234, at page 242, 67 S.Ct. 1599, at page 1603.

The cases recognizing a right in unpaid materialmen (and in the surety that has paid the materialmen) to contract proceeds in the possession of the Government are distinguishable from the present case. Here, Government no longer had any of the contract proceeds and it was not a stakeholder of funds.[8] The Government had paid the proceeds to a lawful assignee of the contractor, an assignee who had fully met all of the requirements and limitations of the Assignment of Claims Act of 1940. We know of no reason which would preclude the Government from paying the proceeds to this lawful assignee.[9]

Bank also specifies error by the lower court in making its second conclusion of law that the

"Contractor held its right to the proceeds of the Contract, subject to an equitable lien in favor of Surety; when it transferred its right to Bank, Bank took the proceeds of the Contract subject to Surety's equitable lien."

Bank takes issue with this conclusion of law on several grounds. One is that "Surety has no 'equitable lien' to the Contract proceeds without a reliance upon a theory of subrogation or assignment." Our discussion above of subrogation indicates that by subrogation to the "right of the Government" Surety does not prevail against Bank.[10]

The application for bond, dated June 20, 1952, submitted by Contractor to Surety contained a clause purporting to assign to Surety the contract proceeds then due or to become due, conditioned on breach or default in performance of the contract.[11] This application purported to assign to Surety claims upon the United States which had not yet been allowed and were not yet due, and no war-

---

7. Kane v. First National Bank, 5 Cir., 1932, 56 F.2d 534, 535–536, 85 A.L.R. 362; California Bank v. United States Fidelity & Guaranty Co., 9 Cir., 1942, 129 F.2d 751, 754–755.

8. See United States v. Munsey Trust Co., 1947, 332 U.S. 234, 240, 67 S.Ct. 1599, 91 L.Ed. 2022; Royal Indemnity Co. v. United States, 1950, 93 F.Supp. 891, 896–899, 117 Ct.Cl. 736.

9. Apparently the Government is precluded from "restitution, refund, or repayment * * * of any amount * * * received under the assignment." 31 U.S.C.A. § 203 reads, in part: "In any case in which moneys due or to become due under any contract are or have been assigned pursuant to this section, no liability of any nature of the assignor to the United States or any department or agency thereof, whether arising from or independently of such contract, shall create or impose any liability on the part of the assignee to make restitution, refund, or repayment to the United States of any amount heretofore since July 1, 1950, or hereafter received under the assignment."

10. Surety has no "equitable lien" by subrogation to the right of the Govern-

ment as the Government's right was terminated by payment, and Surety can claim no "equitable lien" as against Bank by subrogation to rights of the materialmen as the lower court correctly concluded that "the Materialmen have no equitable, legal or moral right against Bank or to the Contract proceeds which were paid by the Government to Bank."

11. The assignment contained in the application for bond reads as follows:
    "7th. In further consideration of the execution of said bond, the undersigned hereby assign(s), transfer(s) and convey(s) to the Corporation all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable to the undersigned at the time of any breach or default in said contract or that thereafter may become due and payble to the undersigned on account of said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that such money, and the proceeds of such payments and properties shall be the sole property of the Corporation and to be by it credited upon any loss, cost, damage, charge and expense sustained or incurred by it in connection with said bond."

rant for payment of which had been issued. Such an assignment falls within the censure of 31 U.S.C.A. § 203.[12]

The assignment to Bank is lawful by the terms of the Assignment of Claims Act of 1940, 31 U.S.C.A. § 203.[13] There is no dispute that appellant Bank of Arizona is a financial institution. Bank has complied with all the requirements provided in 31 U.S.C.A. § 203 prerequisite to a legal assignment, though the required notice by Bank to Surety of the assignment to Bank was not communicated to Surety until about December 10, 1955, whereas the assignment to Bank was made on the preceding October 22. Bank received Surety's response (dated December 23, 1952) to this notice of assignment. Bank received the proceeds of the contract on December 15, 1952.

It appears to be Surety's position that while 31 U.S.C.A. § 203 precludes the assignment contained in the application for contract bond from being a lawful assignment it was nonetheless effective *as an equitable assignment,* relying upon

Martin v. National Surety Co., 1936, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822,[14] and is therefore valid as between Surety and parties taking later assignments with notice of the prior assignment to Surety.[15]

It is Surety's argument that the law requiring Contractor to furnish performance and payment bonds for protection of Government and materialmen placed Bank on notice of the existence of such bonds and their contents, including the assignment clause in the application for bond, and the interest of Surety by reason of this assignment. The fact that Bank knew that bonds had been furnished the Government confirms Surety in its contention that Bank was "put on inquiry," and that had Bank inquired it would have learned of the assignment and of Surety's interest in the contract proceeds.

We do not believe that Surety may recover the contract proceeds from Bank by any right it may have because of the assignment provision in the application for contract bond. Our reason for this

12. 31 U.S.C.A. § 203 reads in part, "All transfers and assignments made of any claim upon the United States * * * shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof."

13. The Assignment of Claims Act of 1940 reads in part: "The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency: Provided,

* * * * *

"4. That in the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment with (a) the contracting officer or the head of his department or agency; (b) the surety or sureties upon the bond or bonds, if any, in connection

with such contract; and (c) the disbursing officer, if any, designated in such contract to make payment.

"Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to this section, shall constitute a valid assignment for all purposes", 31 U.S.C.A. § 203; 41 U.S.C.A. § 15.

14. The Supreme Court, in McKenzie v. Irving Trust Co., 1945, 323 U.S. 365, 373, 65 S.Ct. 405, 409, 89 L.Ed. 305, distinguished Martin v. National Surety Co. as involving an "obviously fraudulent scheme."

15. We are not advised of the theory upon which the lower court proceeded to conclude an "equitable lien" arose. Attention is called to a perceptive law review analysis considering this problem of an equitable lien in government contract proceeds, Kerley, Rights of Parties in Funds withheld under Government Construction Contracts, 20 U. of Cincinnati L.Rev. 494 (1951). Unfortunately, neither party to this case has given consideration to this problem of the existence of an equitable lien in proceeds of a government construction contract.

conclusion rests upon the holding of this Court in California Bank v. United States Fidelity & Guaranty Co., 9 Cir., 1942, 129 F.2d 751. The facts in that case are quite similar to the facts in the present case.[16] There the contractor completed the contract, and contractor paid part of the contract proceeds to a bank, which had made a loan to the contractor, the bank knowing that bonds had been furnished by the contractor to the Government and the company which executed the bonds. The surety paid the claims of the materialmen, and commenced a suit against both the contractor and the bank, seeking to recover an amount equal to what the surety paid to materialmen. The bank appealed from the judgment rendered against it, and this Court reversed. Our reason for the reversal was that the bank had no notice of the assignments to the surety contained in bond applications until after the payment to the contractor of its debt to the bank. We there said:

> "Actually, however, appellant [the bank] had no notice of the assignments until July 19, 1938. Meanwhile, in May and June, 1938, Anderson [the contractor] had incurred his indebtedness to appellant and, on June 30, 1938, had paid it in full. Thus appellant had no notice of the assignments until long after the indebtedness was paid. As to appellant, therefore, the assignments were void." At page 753 of 129 F.2d.

> "At the time it received the $12,114.34, appellant knew that Anderson had received it from the United States under the aforesaid contracts; but appellant had no notice or knowledge of Anderson's default until July 19, 1938—nineteen days after it received the $12,114.34. Thus appellant received the $12,114.34 without notice or knowledge that it was part of a fund in which appellee had, or might thereafter acquire, a superior right. We hold, therefore, that appellee is not entitled to recover any part of the $12,114.34 from appellant. [Citation of cases omitted.]" At page 755 of 129 F.2d.

We believe our decision in the California Bank case is controlling in the present dispute, for here, as in that case, Bank took the assignment and received the proceeds before it had notice of the prior assignment (not perfected under 31 U.S.C.A. § 203) to Surety.[17]

16. In the California Bank case the facts arose prior to the Assignment of Claims Act of 1940, 31 U.S.C.A. § 203, and the contract provided for the Government to retain percentages of partial payments until final completion of the work. However, these were not controlling factors in the decision of that case.

17. See McKenzie v. Irving Trust Co., 1945, 323 U.S. 365, 372–373, 65 S.Ct. 405, 409, 89 L.Ed. 305, where the Government, by check, paid the contractor, who indorsed the check and mailed it, together with contractor's own check drawn on its account with the respondent trust company, to the trust company, the latter crediting the amount of the contractor's personal check on four promissory notes of the contractor. The requirements for a valid assignment, according to the Assignment of Claims Act of 1940, 31 U.S.C.A. § 203, were satisfied at a later time. The Court stated that appellant, trustee in bankruptcy, argued that the surety company " * * * as a matter of federal law * * * has rights to the proceeds of the government contract, superior to those of respondent, and sufficient to require respondent to relinquish the payment made to it." The Court then went on to say:

"In any event the affidavits fail to establish the asserted priority of the surety over respondent [Irving Trust Co.]. The surety did not perfect its assignment by giving the notices and procuring the consent required by the statute. It did not receive the proceeds of the contract here in question. They were paid to respondent which does not appear to have had any notice of the prior assignment of the surety. Under the federal rule, respondent is entitled to retain the assigned money which it received without notice of the prior assignment to the surety. Judson v. Corcoran, 17 How. 612, 15 L.Ed. 231; cf. Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 192–193, 44 S.Ct. 266, 268, 269, 68 L.Ed. 628." Cf. Maryland Casualty Co. v. Lincoln Bank & Trust Co., D.C.W.D.Ky.1941, 40 F.Supp. 782.

We need not prolong this opinion by discussing other specifications of error, including the assertion that certain findings of fact are conclusions of law, or by deciding the meaning of the language of the assignment contained in the application for bond.

The judgment, insofar as it relates to appellant, is reversed and the cause remanded to the lower court with directions to enter judgment that appellee take nothing by its amended complaint, with costs to be awarded to appellant.